UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROLLING STONE, LLC, | * |
| Plaintiff, | * |
| v. | * Civil Action No. 1:23-cv-10741 (LJL) |
| DEPARTMENT OF JUSTICE, | * |
| Defendant. | * |

### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff respectfully moves the Court pursuant to Rule 56 of the Federal Rules of Civil Procedure for an order granting partial summary judgment in favor of Plaintiff regarding Count 1 of the First Amended Complaint on the grounds that no genuine issue as to any material fact exists and Plaintiff is entitled to judgment as a matter of law.

In support of this Motion, the Court is respectfully referred to Plaintiff's Memorandum of Points and Authorities in Support of Its Motion for Partial Summary Judgment.[1]

Date:  April 12, 2024

Respectfully submitted,

 /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
S.D.N.Y. Bar #KM1958
National Security Counselors
4702 Levada Terrace
Rockville, MD  20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org
*Counsel for Plaintiff*

---

[1] Plaintiff has not filed a Local Rule 56.1 statement of material facts with this Motion because such statements are not required in Freedom of Information Act cases in this Circuit. *Ferguson v. FBI*, No. 89-5071, 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995).

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROLLING STONE, LLC, | * |
| Plaintiff, | * |
| v. | * Civil Action No. 1:23-cv-10741 (LJL) |
| DEPARTMENT OF JUSTICE, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Rolling Stone, LLC ("Rolling Stone") commenced this litigation pursuant to the Freedom of Information Act ("FOIA") to obtain copies of Federal Bureau of Investigation ("FBI") records discussing former United States Secretary of State Henry Kissinger ("Kissinger"). After Rolling Stone cited the widespread media interest in the information contained in such records as a compelling need for its request to be expedited (FOIA Request at 3, attached as Ex. A), FBI denied Rolling Stone's request for expedited processing. FBI provided no explanation for the denial beyond stating, "You have not provided enough information concerning the statutory requirements for expedition." (Ltr. from Seidel to McClanahan of 1/11/24 at 1, attached as Ex. B.) For the reasons demonstrated herein, the Court should grant summary judgment to Rolling Stone on Count 1 and order FBI to process its FOIA request at issue in those counts in an expedited fashion.

**ARGUMENT**

FOIA directs agencies to provide expedited processing of requests for records in cases in which the requester demonstrates a "compelling need." 5 U.S.C. § 552(a)(6)(E). "An agency

shall process as soon as practicable any request for records to which the agency has granted expedited processing[.]" *Id.* § 552(a)(6)(E)(iii). FOIA defines "compelling need" as, in part: "[W]ith respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." *Id.* § 552(a)(6)(E)(v)(II). Department of Justice ("DOJ") FOIA regulations also provide for expedited processing of requests involving "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv).[1]

> Rolling Stone included the following text in its request:
>
> Rolling Stone is one of the most widely read magazines in the United States, and Adam Rawnsley is a political and national security reporter with an extensive pedigree. As of this writing, the top story on Rolling Stone is the obituary of Kissinger written by Spencer Ackerman, https://www.rollingstone.com/politics/politics-news/henry-kissinger-war-criminal-dead-1234804748/. Rolling Stone clearly has the reach and the editorial skills to contribute significantly to public understanding of the operations or activities of the government, which would be undeniably implicated in records about one of the country's most well-known governmental figures and, more importantly, in FBI activities related to him. . . .
>
> Given Kissinger's prominence and the fact that he continued to interact with the highest levels of the U.S. government until his death (see, e.g., the document bates-stamped "FBI (19cv1278)-6667" which was an email chain between senior Trump campaign officials obtained during the Mueller Investigation), it is highly probable that records mentioning his name would be located in [specific locations]. . . .
>
> Rolling Stone, a well-recognized representative of the news media primarily engaged in the dissemination of information, is requesting these records to satisfy an urgent need to inform the public about actual or alleged federal government activity, namely, the activities of FBI and other agencies in which Kissinger, an extremely polarizing figure in many circles, played a direct or indirect role, or even those activities, like the Mueller Investigation, where FBI was looking into his activities. Kissinger's death and the opportunity it presents for obtaining these long-sought-after records are the very definition of a breaking news story which concerns a matter of current exigency to the public. Furthermore, the above reasons clearly

---

[1] This provision is incorporated into FOIA by way of the provision authorizing expedited processing "in other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i)(II).

2

> demonstrate that this is a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.

(Ex. A at 2-3.) This language easily meets the standard for expedited processing.

I.  **THE QUESTION OF EXPEDITED PROCESSING IS NOT MOOT**

In anticipation of FBI's argument that the question of expedited processing is moot now that Rolling Stone's request has reached the top of the queue, that is not the standard for judicial review of expedited processing denials. FOIA states that "[a] district court of the United States shall not have jurisdiction to review an agency denial of expedited processing of a request for records after the agency has provided a complete response to the request." 5 U.S.C. § 552(a)(6)(E)(iv). However, the operative term in this provision is "complete." "Even an agency's partial production of documents in response to a FOIA request for expedited processing does not, therefore, 'negate the court's ability to review the agency's determination unless and until that response is 'complete,' and until the agency's response is complete, the court retains the ability to review 'the substantive merits of the agency's disclosure.'" *Treatment Action Grp. v. FDA*, No 15-976, 2016 WL 5171987, at *5 (D. Conn. Sept. 20, 2016) (quoting *NAACP Legal Def. & Educ. Fund, Inc. v. HHS*, No. 07-3378, 2007 WL 4233008, at *6 (S.D.N.Y. Nov. 30, 2007)).

The reason for this distinction is self-apparent. FOIA requires agencies to process requests which warrant expedited processing "as soon as practicable," 5 U.S.C. § 552(a)(6)(E)(iii); it does not require them to move them to the top of their queue and then process them at their leisure. Were FBI allowed to claim that the question of expedited processing was moot now that the request has been moved to the top of the queue, it would render the "as soon as practicable" language—not to mention the word "complete"—"insignificant, if not wholly superfluous." *Duncan v. Walker*, 533 U.S. 167, 167 (2001). Such a

3

reading violates one of the central canons of statutory construction: "This Court's duty to give effect, where possible, to every word of a statute makes the Court reluctant to treat statutory terms as surplusage." *Id.* (citing *United States v. Menasche,* 348 U.S. 528, 538-539 (1955)). Simply put, when a FOIA request is found to warrant expedited processing, the agency may not simply move it to the top of the queue and then proceed as though the request is no different from any other request. It must conduct searches in an expedited manner. It must review responsive records in an expedited manner. It must direct any agencies to which it refers requests to review the referred records in an expedited manner. And it must release records in an expedited manner. Accordingly, Rolling Stone's request for expedited processing remains a valid issue in controversy.

## II.  ROLLING STONE DEMONSTRATED A COMPELLING NEED UNDER THE FIRST TEST

As noted above, FOIA defines "compelling need" in part as: "[W]ith respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). To demonstrate Rolling Stone's "compelling need," this analysis will parallel the language in the statute.

### A.  "A person primarily engaged in disseminating information"

It is generally understood that news media requesters are presumed to satisfy this requirement. *See*, *e.g.*, *Treatment Action Grp.*, 2016 WL 5171987, at *7 ("[C]ourts regularly find that reporters and members of the media qualify as persons primarily engaged in information dissemination.") (quotations omitted); 22 C.F.R. § 171.12(b)(2) ("News media requesters would normally qualify[.]") (State Department regulation). Given that FBI has unilaterally reclassified Rolling Stone as a representative of the news media, as the parties advised the Court in the 20

4

February 2024 status conference, it cannot plausibly argue that Rolling Stone is not primarily engaged in disseminating information. This criterion is accordingly beyond dispute.

**B.     "Urgency to inform the public"**

The D.C. Circuit established a three-part test for determining the existence of the "urgency to inform the public" being claimed herein. *Al-Fayed v. CIA*, 254 F.3d 300, 306 (D.C. Cir. 2001). Under that test, the considerations for the Court are:

1.     "whether the request concerns a matter of current exigency to the American public;"

2.     "whether the consequences of delaying a response would compromise a significant recognized interest;" and

3.     "whether the request concerns federal government activity." *Id.* at 310.

However, courts do not always strictly apply this test (and this Circuit has not addressed the matter), often electing to treat the idea of an "urgency to inform the public" as a more holistic concept, roughly equivalent to whether the material is of "extraordinary public interest," *Natural Res. Def. Council v. DOE*, 191 F. Supp. 2d 41, 43 (D.D.C. 2002), or "newsworthy [and] the subject of an ongoing national debate," *Gerstein v. CIA*, No. 06-4643, 2006 WL 3462658, at *6 (N.D. Cal. Nov. 29, 2006). One court in this Circuit has stated a need to show "widespread and intense media interest in the subject matter of the request in the time period immediately prior to when the request was made," *Treatment Action Grp.*, 2016 WL 5171987, at *8, while another has found that a requester satisfied the test despite only citing one news article about the FDA investigation in question. *Bloomberg, L.P. v. FDA*, 500 F. Supp. 2d 371, 378 (S.D.N.Y. 2007).

In *Natural Resources Defense Council*, for example, the court ordered expedited processing of a request for documents concerning energy policy and President Bush's Energy

5

Task Force, concluding that the request concerned material of "extraordinary public interest." 191 F. Supp. 2d at 43. Another court ordered expedited processing in *Gerstein* of a request for records concerning "the government's ongoing efforts to address leaks of classified information." 2006 WL 3462658 at *6.

Taken together, the above cases recognize a clear relationship between the criteria set forth in *Al-Fayed* and the underlying concept of extraordinary public interest, generally expressed in terms of media interest in the information in question. Viewed through that lens, it is clear to see how records about the activities—both sanctioned and unsanctioned—of one of the most polarizing figures in U.S. foreign policy concern a matter of "current exigency to the American public."

For example, as noted in Rolling Stone's request letter, Kissinger's interactions with the presidential campaign of Donald Trump were discovered and referenced during the Mueller Investigation, and there are likely records of other comparable interactions in FBI's files that are not publicly known at this time. Kissinger was also still an active participant in U.S. foreign policy matters as recently as last year, even meeting with the Chinese leader Xi Jinping and the Chinese defense minister. David Pierson, Vivian Wang, & Edward Wong, *Frustrated by Biden, China Courts "Old Friends" Like Kissinger*, N.Y. Times (July 20, 2023), *available at* https://www.nytimes.com/2023/07/20/world/asia/china-kissinger-visit-us.html (last accessed Apr. 9, 2024). The federal government, for its part, was still actively engaging with Kissinger as well up until his death. *See id.* ("[National Security Council spokesperson] Mr. Kirby said that the administration looked forward to hearing from Mr. Kissinger about his trip."). "For decades following his roles as national security adviser and secretary of state in the Nixon and Ford administrations, Mr. Kissinger oversaw a lucrative business consultancy that relied on his name

6

recognition *and his contacts with senior American and foreign officials*. Edward Wong, *Kissinger Met with Xi and Other Powerful Figured into His 100th Year*, N.Y. Times (Nov. 30, 2023) (emphasis added), *available at* https://www.nytimes.com/2023/11/29/us/kissinger-xi-china.html (last accessed Apr. 12, 2024) [hereinafter *Kissinger Met with Xi*]. All of these examples demonstrate the extraordinary public interest in information about Kissinger's activities and about the federal government's activities regarding *him*.[2]

Furthermore, the Court may take judicial notice of the fact that in the intervening time, at least one story has been written in a major news outlet based almost exclusively on records obtained through FOIA since Kissinger's death. *See* Matthew Petti, *How Did Kissinger Become an American Citizen?* Reason (Mar. 12, 2024), *available at* https://reason.com/2024/03/12/how-did-kissinger-become-an-american-citizen/ (last accessed Apr. 9, 2024) (discussing immigration records obtained after Kissinger's death). "It is well-established that a court may take judicial notice of the fact of the publication." *Chen v. Marvel Food Servs. LLC*, No. 15-6206 (2022 WL WL 4226098, at *3 n.10 (E.D.N.Y. Sept. 9, 2022) (citing *Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 612 & n.4 (S.D.N.Y. 2008)). When a media outlet with over three million monthly visits, *see* https://www.similarweb.com/website/reason.com/#overview (last accessed Apr. 9, 2024), runs a story about how a deceased public figure immigrated to the United States *eighty years ago*, that fact strongly supports the contention that extraordinary public interest exists in

---

[2] In anticipation of FBI's argument that these records are simply examples and not representative of the universe of responsive records about Kissinger, it is important to note that Rolling Stone does not have to demonstrate an extraordinary public interest in *every responsive record*, but only in the general subject matter of the request. Should the Court wish to make a fact-dependent inquiry into which records warrant expedited processing and which do not, such a process is not unheard-of, *Freeman v. DOJ*, 822 F. Supp. 1064, 1066 (S.D.N.Y. 1993), but the Court should first order FBI to provide more information about the types of responsive records it maintains, so that Rolling Stone and the Court are able to intelligently gauge the newsworthiness of the records for themselves.

7

more than just the immediately obvious aspects of that person's life. While Rolling Stone does not contend that this coverage by itself satisfies its burden in this respect, it is more than enough to meet that burden when coupled with the other evidence offered above.

### C. "Concerning actual or alleged Federal Government activity"

As another court in this District has held, "The use of the word 'concerning' in this context is significant because it does not suggest an exclusive or definitive source of the information that might shed light on the relevant government activity. Instead, the word 'concerning' in its ordinary meaning is much more broadly understood. Its definition is 'relating to; to be about; to bear on.'" *Bloomberg*, 500 F. Supp. 2d at 377 (quoting Merriam-Webster Online Dictionary, http://www.merriam-webster.com). As with "an individual primarily engaged in disseminating information" above, the applicability of this criterion to Rolling Stone's request is plain on its face—all records requested deal expressly with the U.S. Government's actions and/or alleged actions, either because Kissinger was acting as an agent of the Government or because the records are about the Government's interest in his activities.

## II. ROLLING STONE DEMONSTRATED A COMPELLING NEED UNDER THE SECOND TEST

As noted above, DOJ FOIA regulations also define "compelling need" in part as applying in cases involving "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv). Since Rolling Stone has already demonstrated how this request concerns a "matter of widespread and exceptional media interest," it will limit this discussion to the second criterion.

It cannot be disputed that Kissinger was a highly polarizing figure in the United States. He was awarded the Nobel Peace Prize, which prompted famous political satirist Tom Lehrer to

observe, "Political satire became obsolete when Henry Kissinger was awarded the Nobel peace prize," Todd Purdom, *"When Kissinger won the Nobel peace prize, satire died,"* The Guardian (July 30, 2000), *available at* https://www.theguardian.com/culture/2000/jul/31/artsfeatures1 (last accessed Apr. 12, 2024), and yet even the article quoted in Rolling Stone's request referred to him as a "war criminal." That article itself focused primarily on this dichotomy, highlighting the stark differences in how Kissinger is perceived in different populations. *See generally* Spencer Ackerman, *Henry Kissinger, War Criminal Beloved by America's Ruling Class, Finally Dies* Rolling Stone (Nov. 29, 2023), *available at* https://www.rollingstone.com/politics/politics-news/henry-kissinger-war-criminal-dead-1234804748/ (last accessed Apr. 12, 2024) ("The infamy of Nixon's foreign-policy architect sits, eternally, beside that of history's worst mass murderers. A deeper shame attaches to the country that celebrates him."). *See also Kissinger Met with Xi* ("Critics say Mr. Kissinger profited after he left government—and into his 100th year—on a business built off what they call 'war crimes' he committed while he was in office.") (quoting *id.*). His interactions with the Trump campaign were examined by the Special Counsel.

And yet, the Government was still consulting with Kissinger regarding some of the most pressing foreign policy matters of the day: U.S. Secretary of State Antony Blinken publicly stated the day after his death, "I was very privileged to get his counsel many times, including as recently as about a month ago." U.S. Dep't of State, *Secretary Antony J. Blinken and Israeli President Isaac Herzog Before Their Meeting* (Nov. 30, 2023), *at* https://www.state.gov/secretary-antony-j-blinken-and-israeli-president-isaac-herzog-before-their-meeting-7/ (last accessed Apr. 12, 2024). *See also* U.S. Dep't of State, *On the Passing of Henry A. Kissinger* (Nov. 30, 2023), *at* https://www.state.gov/on-the-passing-of-henry-a-kissinger/ (U.S. Secretary of State Blinken describing seeking Kissinger's counsel on topics from China to

9

artificial intelligence "up to the final weeks of his life"). If nothing else, the involvement of such a polarizing figure in such a wide range of current issues at such a high level clearly demonstrates that the Government's interactions with Kissinger raise "possible questions about the government's integrity which affect public confidence," since the questions do not have to be *universal*, just *possible*. When a significant percentage of the American people perceive an official with whom the Government continues to interact as a war criminal, there can fairly be said to be possible questions about the Government's integrity which affect public confidence.

### IV.     FBI FAILED TO DEMONSTRATE REASONED DECISIONMAKING

If the Court remains unconvinced of the need to order FBI to grant expedited processing to Rolling Stone's request, the Court should follow the lead of the 2020 decision in *Citizens for Responsibility & Ethics in Washington v. DOJ* when evaluating FBI's arguments. In that case, Judge Jackson held that, since the Court is limited to the record before the agency in expedited processing cases, 5 U.S.C. § 552(a)(6)(E)(iii), the usual Administrative Procedure Act rules apply to the agency decisionmaking process, such that, as here, an agency's "mere recitation of the language in the [agency] provision on expedited review does not suffice as a reasoned explanation for its denial of [an expedited processing] request." 436 F. Supp. 3d 354, 359 (D.D.C. 2020). Judge Jackson concisely explained:

> [A]s the Supreme Court has emphasized, "courts retain a role, and an important one, in ensuring that agencies have engaged in reasoned decisionmaking." *Judulang v. Holder*, 565 U.S. 42, 53 . . . (2011). Thus, in this context as in others, an agency is required to offer an adequate explanation for its actions so that a court is able to "evaluate the agency's rationale at the time of the decision." *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 654 . . . (1990). Put simply, "the agency must explain why it decided to act as it did." *Butte Cty. v. Hogen*, 613 F.3d 190, 194 . . . (D.C. Cir. 2010). And, pursuant to the FOIA statute, judicial review of an agency's decision to grant or deny a request for expedited processing "shall be based on the record before the agency at the time of the determination." 5 U.S.C. § 552(a)(6)(E)(iii). . . .

10

> The agency responded [to plaintiff's request for expedited processing] with a single sentence: "CREW's FOIA request is not a matter in which there exist possible questions about the government's integrity that affect public confidence." Since the agency did nothing more than parrot its own regulatory language, and offered no reasoning or analysis, its decision, as in the APA context, is entitled to little deference. *See State Farm*, 463 U.S. at 43 (explaining that while the scope of judicial review of agency action is "narrow and a court is not to substitute its judgment for that of the agency[,] [n]evertheless, the agency must . . . articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made") (internal citation omitted). . . .
>
> Here, CREW stated in its request that the Attorney General of the United States had mischaracterized some of the core conclusions contained in a report of great public significance, written by the Department's own duly appointed Special Counsel, in advance of its public release. . . . Since DOJ provided no explanation for its flat assertion to the contrary, it does not stand up to judicial review.

*Id.* at 360-61.

In this case, FBI's statement was even less specific than DOJ's in that case. The full extent of FBI's discussion of the matter was to check boxes next to the applicable provisions and then state, "You have not provided enough information concerning the statutory requirements for expedition." (Ex. B at 1.) This response demonstrates a clear lack of reasoned decisionmaking. It indicates nothing more than the fact that FBI is aware that the DOJ regulations exist. The Court should follow Judge Jackson's lead and find that FBI failed to meet its evidentiary burden.

Should FBI attempt to supplement this skeletal statement with an "explanation" presented in a declaration describing the alleged infirmities in Rolling Stone's request, the Court should decline any such effort to expand the record beyond what "the record before the agency at the time of the determination," 5 U.S.C. § 552(a)(6)(E)(iii), unless FBI provides evidence that the purported reasons were actually considered at the time of the determination, which will entail providing the *entire* administrative record and not just the correspondence. The FOIA statute does not restrict the court's review to "the parts of the record before the agency that the agency selectively chooses to produce"; it requires that the Court consider the entire record before the

11

agency. *See, e.g.*, *Brown v. U.S. Patent & Trademark Ofc.*, 445 F. Supp. 2d 1347, 1354 (M.D. Fla. 2006) (holding in a fee waiver context that administrative record—which "includes Plaintiff's e-mailed FOIA requests, letters from USPTO to Plaintiff, e-mails, memoranda, and handwritten notes made by USPTO employees in processing Plaintiff's requests, the documents provided by the USPTO in response to Plaintiff's first FOIA request, the USPTO estimate of charges for processing Plaintiff's second FOIA request and denial of his fee waiver request, Plaintiff's letter appealing that decision with three attachments, and the USPTO denial of Plaintiff's appeal"—was sufficient because it "appears to contain documents which would be prepared or assembled in the normal course of evaluating a FOIA fee waiver request"). Accordingly, the Court cannot perform an adequate *de novo* review of any expedited processing determination without the agency first presenting all of its evidence that it made the correct determination, and if FBI maintains that the FOIA correspondence exchange with Rolling Stone is the extent of the administrative record, the Court must conclude that no other admissible evidence exists to support the contention that FBI considered *any* applicable facts at the time of the determination.

## **CONCLUSION**

Rolling Stone has demonstrated that it has a compelling need to be granted expedited processing for its FOIA request. For the reasons described above, Rolling Stone is entitled to partial summary judgment on Count 1 and an order directing FBI to process its request as soon as practicable.

Date:   April 12, 2024

                                                Respectfully submitted,

                                                __/s/ Kelly B. McClanahan__
                                                Kelly B. McClanahan, Esq.
                                                S.D.N.Y. Bar #KM1958
                                                National Security Counselors
                                                4702 Levada Terrace
                                                Rockville, MD  20853
                                                301-728-5908
                                                240-681-2189 fax
                                                Kel@NationalSecurityLaw.org

                                                *Counsel for Plaintiff*