# NATIONAL SECURITY COUNSELORS

4702 LEVADA TERRACE
ROCKVILLE, MD 20853
___

TELEPHONE: (301) 728-5908
FACSIMILE: (240) 681-2189

KEL MCCLANAHAN, ESQ., EXECUTIVE DIRECTOR (admitted in DC, NY, WA)
EMAIL: KEL@NATIONALSECURITYLAW.ORG
BRADLEY P. MOSS, ESQ., DEPUTY EXECUTIVE DIRECTOR (admitted in DC, IL)

12 April 2024

Hon. Lewis J. Liman
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States District Courthouse
500 Pearl Street
New York, NY 10007

Re:   *Rolling Stone, LLC v. DOJ*, Case No. 23-10741

Dear Judge Liman:

On behalf of Plaintiff Rolling Stone, LLC ("Rolling Stone"), I respectfully submit this letter motion to respectfully ask this Court to compel the Federal Bureau of Investigation ("FBI") to file a motion formally requesting a stay pursuant to *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976), if it intends to delay the resolution of this case by more than eight months. I attempted to confer in good faith with FBI's counsel, in an effort to resolve the dispute, prior to filing this motion, and FBI's counsel informed me that FBI opposes the requested relief.

Rolling Stone commenced this litigation pursuant to the Freedom of Information Act ("FOIA") to obtain copies of FBI records discussing former United States Secretary of State Henry Kissinger ("Kissinger"). After Rolling Stone commenced this litigation, FBI began processing responsive records, and it states that it will continue to process them at a rate of approximately 500 pages/month. (Ltr. from Tarczynska & McClanahan to J. Liman of 2/13/24, Dkt. #18, at 2 (filed Feb. 13, 2024).) Given that there are likely to be tens if not hundreds of thousands of pages of records responsive to Rolling Stone's request, this processing rate means that, if FBI continues at its current rate of production of approximately 6000 pages/year, FBI will be processing responsive records for years, if not decades. In such cases, FBI historically asks a court to endorse its processing rate as an act of discretion, and FBI is expected to do so in this case. The Court should decline this invitation.

In cases where an agency seeks to postpone briefing by a significant period, it is well-established that the agency must seek an *Open America* stay justifying the delay (and, accordingly, justifying the processing rate causing the delay). In such a motion, an agency must show "exceptional circumstances" to meet the "substantial burden [placed] on the government to justify to the courts any noncompliance with FOIA time limits." *Open Am.*, 547 F.2d at 617 (Leventhal, J., concurring). An *Open America* stay may be granted "(1) when an agency is burdened with an unanticipated number of FOIA requests; *and* (2) when agency resources are

inadequate to process the requests within the time limits set forth in the statute; *and* (3) when the agency shows that it is exercising 'due diligence' in processing the requests; *and* (4) the agency shows 'reasonable progress' in reducing its backlog of requests." *Wilderness Soc'y v. Dep't of the Interior*, No. 04-650, 2005 WL 3276256, at *10 (D.D.C. Sept. 12, 2005). "The few decisions of this Circuit which have confronted this issue generally have followed the [D.C.] Circuit Court's reasoning in *Open America*, and 'agencies confronting an overwhelming number of requests . . . have been given additional time to respond to them.'" *Rabin v. Dep't of State*, 980 F. Supp. 116, 122 (E.D.N.Y. 1997) (quoting *Freeman v. DOJ*, 822 F. Supp. 1064, 1066 (S.D.N.Y. 1993)).

In numerous other cases in which I have been involved, the Government has taken the unusual position that an *Open America* stay is not required when the agency in question is processing records, and that it is only necessary when the agency seeks to delay its *commencement* of the process. In other words, according to the Government, if FBI seeks to wait until September 2024 to begin processing records, which it will complete processing in December 2024, it must meet the strict requirements for an *Open America* stay, but if it seeks to slowly process records until April 2029, it may simply cite its "policy" and rely on the Court's inherent authority to enter scheduling orders as an exercise of discretion. There is no defensible reason for such a dichotomy, and such an extreme delay in the resolution of a FOIA case is beyond the scope of the Court's inherent authority to manage its docket and is the *raison d'être* for the *Open America* line of jurisprudence. It is well-established that an agency has complied with FOIA when it *completes* its processing of responsive records, not when it *begins* it. If the purpose of the heightened burden for an *Open America* stay is "to justify to the courts any noncompliance with FOIA time limits." *Open Am.*, 547 F.2d at 617 (Leventhal, J., concurring), then it must apply to "*any* noncompliance with FOIA time limits," *id.* (emphasis added), regardless of whether the noncompliance is due to a delay in the commencement or the completion of the process.

*Open America* itself dealt with a district court which directed the agency to immediately process the plaintiff's request. That order was reversed and the stay was granted after "exceptional circumstances" were found, but the *Open America* stay was created as, and remains, an exception to the default rule that agencies must comply with all of FOIA, including the statutorily imposed deadlines. An agency's "good faith and due diligence" remain the "touchstones underlying FOIA's statutory scheme." *Judicial Watch, Inc. v. DHS*, 895 F.3d 770 (D.C. Cir. 2018) (quoting *Open Am.*, 547 F.2d at 616). A district court is obligated to determine that an agency "has organized its records management systems to enable prompt determinations to produce records or to invoke an exemption, and to monitor when necessary an agency's progress in adjusting its records management systems to enable it to comply with FOIA." *Id.* at 784. When an agency has not yet processed all records, it has not "responded" to the entire request, because it may still decide to assert exemptions for as-yet-unprocessed records. The point of an *Open America* stay is to allow more time to respond to the request in its entirety, not just part of it. Otherwise, an agency could simply produce one responsive document up front and then delay the release of other records for years.

Once in court, an agency "may further extend its response time [to a request] *if it demonstrates 'exceptional circumstances' to the court.*" *Citizens for Resp. & Ethics in Wash. v.*

*FEC*, 711 F.3d 180 (D.C. Cir. 2013) (emphasis added). The language of *Open America* jurisprudence broadly makes clear that agencies must either promptly comply with FOIA's requirements or *actively* seek a stay for "exceptional circumstances" to allow more response and/or processing time, which may only be granted as long as the agency is "exercising due diligence in responding to the request." 5 U.S.C. 552 § (a)(6)(C)(i). "Exceptional circumstances" specifically *excludes* "a delay that results from a predictable agency workload of requests . . . unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." *Id.* § 552((a)(6)(C)(ii). This change was specifically made in 1996 to narrow the circumstances under which agencies could rely on *Open America* stays—and such a change is hardly consistent with the notion that an agency does not have to actively justify its delay in response or processing if it is doing anything more than not responding *at all*.

Possible reasons for such a stay include that the agency is "deluged" with requests "vastly in excess of that anticipated by Congress," *Open Am.* at 616, or that the agency is making efforts to, *e.g.*, reduce the number of pending requests or the size or complexity of other requests. *See, e.g.*, *Elec. Privacy Info Ctr. v. FBI*, 933 F. Supp. 2d 42, 46 (D.D.C. 2013). But the agency has to affirmatively meet this burden in order to be given more time. *See, e.g., Clemente v. FBI*, 71 F. Supp. 3d 262, 266 (D.D.C. 2014) ("The FBI must make two showings before the court may grant a stay of proceedings: (1) that exceptional circumstances exist, and (2) that the agency is 'exercising due diligence' in processing [the] request."). "[A]llowing a mere showing of a normal backlog of requests to constitute 'exceptional circumstances' would render the concept and its underlying Congressional intent meaningless." *Bloomberg, L.P. v. FDA*, 500 F. Supp. 2d 371, 375 (S.D.N.Y. 2007). All of these cases take for granted that an *Open America* stay is a conditional grant of more time contingent on the agency's affirmative showings. Otherwise, the plaintiff may be entitled to a judgment on the pleadings. *See, e.g.*, *Nat'l Sec. Archive v. SEC*, 770 F. Supp. 2d 6, 8-9 (D.D.C. 2011) (finding that plaintiff's allegation that defendants violated FOIA by failing to disclose responsive records within the statutory period was countered by the SEC's affirmative detailing of its exceptional circumstances and due diligence warranting an *Open America* stay).

A further, practical reason the burden is on the agency to move for and demonstrate eligibility for an *Open America* stay is that the plaintiff is in no position to know, let alone demonstrate to the Court, whether the agency is actually exercising due diligence or is truly facing exceptional circumstances. For both judicial economy and basic fairness purposes, it is only logical that the agency must either produce the requested records quickly or explain why it cannot. This is effectively the same logic behind *Vaughn* indices, as *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), found that the Government could not simply assert broad and conclusive exemptions, but instead had to defend the asserted exemptions in more detail because it was the only party that could do so absent a special master. Indeed, the *Vaughn* court noted that "[t]he procedural requirements we have spelled out herein may impose a substantial burden on an agency seeking to avoid disclosure. Yet the current approach places the burden on the party seeking disclosure, in clear contravention of the statutory mandate." *Id.* at 828. In FOIA litigation, many burdens are on the Government for a reason. Here, it is consistent with the entire FOIA framework to require that an agency either actively justify its delays or be vulnerable to judgment on the pleadings.

To be clear, Rolling Stone is *not* asking the Court in this motion to order FBI to process responsive records at any particular rate, nor is it even asking the Court to deny an FBI motion for leave to proceed at its standard 500 pages/month rate. It is simply asking the Court to order FBI to seek an actual *Open America* stay should it wish to delay the beginning of summary judgment briefing past December 2024, and it is asking the Court to evaluate such a motion using the strict criteria established in *Open America*, rather than making a decision based on no solid criteria and grounded solely in its own discretion to manage its calendar, as FBI will ask. As another court in this district observed, rather than fully granting or denying an *Open America* stay, "in practice, courts usually grant at least some sort of 'due diligence-exceptional circumstances' extension in the form of an equitable compromise." *Ferguson v. FBI*, 722 F. Supp. 1137, 1140 (S.D.N.Y. 1989). However, even that equitable compromise is grounded, at least in part, in how well the agency meets the burden established by the *Open America* three-part test, which is a far cry from the virtually nonexistent burden FBI will attempt to meet, should it be allowed to proceed as it has before.

Similarly, I am filing this motion separately from Rolling Stone's contemporaneous motion for partial summary judgment on the question of expedited processing, because while the two issues appear to be intertwined, they actually remain independent. If the Court grants Rolling Stone's motion for partial summary judgment, that fact will strengthen Rolling Stone's position in an argument over the proper processing rate, but it will not change what standards FBI should be required to meet to justify its processing rate. Contrariwise, even if the Court finds that Rolling Stone is not entitled to expedited processing, that does not absolve FBI from needing to justify its processing rate, nor does it mean that FBI should be allowed to satisfy a less stringent standard in such an argument. *See Treatment Action Grp. v. FDA*, No 15-976, 2016 WL 5171987, at *12 (D. Conn. Sept. 20, 2016) (denying both plaintiff's motion for expedited processing and agency's motion for *Open America* stay). In other words, the Court should definitely adjudicate Rolling Stone's motion for partial summary judgment before it addresses the question of what processing rate is appropriate in this case, but it should still decide what *standards* a debate over the processing rate should be evaluated under without any concern for the outcome of the motion for partial summary judgment. The two motions involve separate and distinct legal questions, and any overlap is illusory.

Because the purpose of this motion is simply to ask this Court to compel FBI to seek an *Open America* stay for any delay of more than eight months, Rolling Stone will not spend any time attacking the proposed processing rate in this context; that would defeat the purpose of the motion. Simply put, this motion is not the proper vehicle for such a detailed argument; a motion for an *Open America* stay, in which FBI provides evidence justifying its entitlement to such a stay, is. In this letter I simply ask the Court to set the proper stage for that argument and make clear what burden of proof it will be applying to the evidence.

Sincerely,

Kel McClanahan<br>
Counsel for Plaintiff Rolling Stone