UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROLLING STONE, LLC, | 23 Civ. 10741 (LJL) |
| Plaintiff, | |
| -v- | |
| UNITED STATES DEPARTMENT OF JUSTICE | |
| Defendant. | |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2748/2689
E-mail: dominika.tarczynska@usdoj.gov
        danielle.marryshow@usdoj.gov

DOMINIKA TARCZYNSKA
DANIELLE J. MARRYSHOW
Assistant United States Attorney
– Of Counsel –

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ........................................................................................................2

    A.    The FOIA Request ..................................................................................2

    B.    Status of Response to FOIA Request........................................................4

    C.    Procedural History ..................................................................................5

STANDARD OF REVIEW ........................................................................................6

ARGUMENT .............................................................................................................7

I.      LEGAL STANDARDS FOR FOIA PROCESSING............................................7

    A.    FOIA Does Not Impose Specific Processing Deadlines.............................7

    B.    The Standard for Expedited Processing ...................................................8

II.    PLAINTIFF HAS NOT ESTABLISHED THAT IT IS ENTITLED TO
       EXPEDITED PROCESSING .........................................................................11

    A.    Plaintiff Has Not Shown An Urgency To Inform The Public About Actual
         Or Alleged Government Activity...............................................................12

    B.    Plaintiff Has Not Shown that the FOIA Request Seeks Records Related to
         A Matter of Widespread and Exceptional Media Interest in Which There
         Exist Possible Questions About the Government's Integrity That Affect
         Public Confidence ..................................................................................15

III.   THE FBI IS ALREADY PROCESSING PLAINTIFF'S FOIA REQUEST ...................17

CONCLUSION..........................................................................................................18

# TABLE OF AUTHORITIES

**Cases**                                                                                                          Page

*Al-Fayed v. C.I.A.*,
   254 F.3d 300 (D.C. Cir. 2001) ............................................................................................ passim

*Am. Civ. Liberties Union of N. Cal. v. U.S. Dep't of Justice*,
   2005 WL 588354 (N.D. Cal. Mar. 11, 2005) ..................................................................... 10

*Bloomberg L.P. v. U.S. Food & Drug Admin.*,
   500 F. Supp. 2d 371 (S.D.N.Y. 2007) .............................................................................. 9, 14

*Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of State*,
   300 F. Supp. 3d 540 (S.D.N.Y. 2018) ................................................................................. 10

*Carney v. U.S. Dep't of Justice*,
   19 F.3d 807 (2d Cir. 1994) ..................................................................................................... 6

*Citizens for Responsibility & Ethics in Wash. v. FEC*,
   711 F.3d 180 (D.C. Cir. 2013) ............................................................................................... 7

*Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*,
   436 F. Supp. 3d 354 (D.D.C. 2020) ..................................................................................... 16

*Colbert v. Fed. Bureau of Investigation*,
   2018 WL 6299966 (D.D.C. Sept. 3, 2018) .......................................................................... 10

*Documented NY v. U.S. Dep't of State*,
   2021 WL 4226239 (S.D.N.Y. Sept. 16, 2021) ....................................................... 9, 10, 13, 17

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Def.*,
   355 F. Supp. 2d 98 (D.D.C. 2004) ........................................................................... 9, 14, 15

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice*,
   322 F. Supp. 2d 1 (D.D.C. 2003) ........................................................................................ 16

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice*,
   15 F. Supp. 3d 32 (D.D.C. 2014) ........................................................................................ 10

*Energy Pol'y Advocs. v. U.S. Dep't of the Interior*,
   2021 WL 4306079 (D.D.C. Sept. 22, 2021) ....................................................................... 13

*Landmark Legal Found. v. E.P.A.*,
   910 F. Supp. 2d 270 (D.D.C. 2012) ........................................................................... 8, 10, 17

*Long v. Office of Personnel Mgmt.*,
    692 F.3d 185 (2d Cir. 2012) .......................................................................... 6

*Middle E. Forum v. U.S. Dep't of Homeland Sec.*,
    297 F. Supp. 3d 183 (D.D.C. 2018) ............................................................ 10

*Muttitt v. U.S. Dep't of State*,
    926 F. Supp. 2d 284 (D.D.C. 2013) .............................................................. 8

*N.Y. Legal Assistance Grp. v. BIA*,
    401 F. Supp. 3d 445 (S.D.N.Y. 2019) .......................................................... 6

*N.Y. Times Co. v. U.S. Dep't of Def.*,
    2022 WL 1547989 (S.D.N.Y. Apr. 21, 2022) ............................................. 18

*N.Y. Times Co. v. U.S. Dep't of Justice*,
    872 F. Supp. 2d 309 (S.D.N.Y. 2012) .................................................. 6, 9, 18

*Nat. Res. Def. Council v. U.S. Dep't of Interior*,
    73 F. Supp. 3d 350 (S.D.N.Y. 2014) ............................................................ 6

*Nat'l Sec. Counselors v. U.S. Dep't of Justice*,
    848 F.3d 467 (D.C. Cir. 2017) .................................................................... 17

*Oversight v. U.S. Dep't of Justice*,
    292 F. Supp. 3d 501 (D.D.C. 2018) .................................................. 6, 7, 15, 16

*Progress v. Consumer Fin. Prot. Bureau*,
    2017 WL 1750263 (D.D.C. May 4, 2017) .............................................. 9, 13

*Protect Democracy Project, Inc. v. U.S. Dep't of Def.*,
    263 F. Supp. 3d 293 (D.D.C. 2017) ............................................................ 10

*Treatment Action Grp. v. Food & Drug Admin. & U.S. Dep't of Health & Hum. Servs.*,
    2016 WL 5171987 (D. Conn. Sept. 20, 2016) ..................................... 6, 13, 17

*Tripp v. U.S. Dep't of Def.*,
    193 F. Supp. 2d 229 (D.D.C. 2002) ............................................................ 14

*Wadelton v. Dep't of State*,
    941 F. Supp. 2d 120 (D.D.C. 2013) ........................................................ 6, 14

**Statutes**

5 U.S.C. § 552(a) ............................................................................................ passim

28 U.S.C. § 1657 .................................................................................................... 5

**Regulations**

28 C.F.R. § 16.5 ......................................................................................... 4, 8, 9, 15

Defendant the United States Department of Justice ("DOJ" or the "Government"), by its attorney, Damian Williams, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in opposition to Plaintiff Rolling Stone, LLC's ("Rolling Stone") motion for partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure on the issue of the Federal Bureau of Investigation ("FBI")'s denial of Plaintiff's request for expedited processing of its Freedom of Information Act ("FOIA") Request.

## PRELIMINARY STATEMENT

This matter relates to a broad FOIA request submitted by Rolling Stone to the FBI for "all FBI records about Henry Kissinger" shortly after Mr. Kissinger's death in November 2023.  On its face, this request seeks decades worth of historical records about an individual who served as Foreign Policy Advisor and Secretary of State in the 1960s and 1970s.  Plaintiff sought expedited processing of its immense FOIA request, but offered no explanation (other than tracking the language of the statutory and regulatory criteria for expedited processing) as to why Mr. Kissinger's death created a compelling need for these historical documents to be processed on an expedited basis.  Accordingly, the FBI properly denied the request for expedited processing because Plaintiff had failed to provide enough information concerning the basis of its request.  Specially, Plaintiff had neither demonstrated that there was "an urgency to inform the public about actual or alleged federal government activity" nor that this was a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence."

Expedited processing is reserved for FOIA requests that involve matters about which there is an exigency to provide information to the American public about currently ongoing government activity and the delay in responding to the FOIA request would compromise significant recognized interests.  This request simply does not involve such matters—even if Plaintiff views Mr.

Kissinger's death as an "opportunity" to obtain "long sought after" historical records. Accordingly, the Court should deny Plaintiff's motion for partial summary judgment on the denial of its expedited processing request.   In any event, the FBI has already begun producing records in response to this FOIA request, and Plaintiff does not challenge the pace at which the FBI is reviewing records.   Thus, even if Plaintiff were to prevail on its motion, the relief that it could obtain is already underway.

## BACKGROUND

### A.    The FOIA Request

On November 30, 2023, Plaintiff Rolling Stone submitted a FOIA request to the FBI seeking "all FBI records about Henry Kissinger."   Declaration of Michael G. Seidel ("Seidel Decl.") ¶ 5.   The FOIA request specified that the search "may not be limited to 'main file records' or records located in the CRS [Central Record System]." *Id.*; *see also* Compl. ¶8.   Plaintiff further "specifically request[ed] all information about Kissinger located by a full-text search of Sentinel as well as all email records in the New York and Washington Field Offices which contain the word 'Kissinger.'"   Seidel Decl. ¶ 5.   The FOIA request contained no date range limiting the files that Plaintiff was requesting be searched.

As the Washington Post obituary cited in in Plaintiff's FOIA request explains, Henry Kissinger died on November 29, 2023 at the age of 100.   "Henry Kissinger, who shaped world affairs under two presidents, dies at 100," *Washington Post*, Nov. 29, 2023, available at https://www.washingtonpost.com/obituaries/2023/11/29/henry-kissinger-dead-obituary/   (last accessed May 29, 2024).   His involvement in the United States Government began in the early 1960s when he became a part-time consultant to President Kennedy. *Id.*   Mr. Kissinger served as national security advisor and Secretary of State to President Nixon, and Secretary of State under

President Ford. *Id.*  On its face therefore, Plaintiff's FOIA request seeks decades of historical documents.

As is relevant here, Plaintiff requested expedited processing pursuant to 5 U.S.C. § 522(a)(6)(E)(i)(II). Seidel Decl. ¶ 6.  In justifying its request for expedited processing, Plaintiff claimed that it requested these records "to satisfy an urgent need to inform the public about actual or alleged federal government activity, namely, the activities of the FBI and other agencies in which Kissinger, an extremely polarizing figure in many circles, played a direct or indirect role, or even those activities, like the Mueller Investigation, where FBI was looking into his activities." *Id.*  Plaintiff further asserted that "Kissinger's death and the opportunity it presents for obtaining these long-sought-after records are the very definition of a breaking news story which concerns a matter of current exigency to the public."  *Id.*  Plaintiff claimed that these reasons "clearly demonstrate that this is a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence."  *Id.*

The FBI acknowledged the FOIA request on December 11, 2023.  Seidel Decl ¶ 8.  On this date the FBI also informed Plaintiff that "unusual circumstances," which delayed the FBI's ability to make a determination on Plaintiff's FOIA request within 20 days, applied to the processing of the request, based on one or more of the following scenarios: there is an need to search for and collect records from field offices and/or other offices that are separate from the FBI Record/Information Dissemination Section (RIDS); there is a need to search for, collect, and examine a voluminous amount of separate and distinct records; and/or there is a need for consultation with another agency or two or more DOJ components. *Id.; see also id.* Ex. B.

On January 11, 2024, the FBI informed Plaintiff that it had denied its request for expedited processing because it did not provide enough information concerning the statutory requirements

for expedited processing pursuant to 28 C.F.R. § 16.5(e)(1)(ii) or 28 C.F.R. § 16.5(e)(1)(iv).  Seidel Decl. ¶ 9.  The FBI determined that Plaintiff "only gave conclusory statements that tracked the language" of the statute and DOJ FOIA regulations and did not provide sufficient factual information to bear its burden of showing why Kissinger's death either "created an urgent need to inform the public on past government activity," or "gave rise to possible questions about the government's integrity that affect public confidence."  Seidel Decl. ¶¶ 11-12.  Plaintiff was informed that it could appeal the FBI's denial of its request for expedited processing to the Office of Information Policy of the Department of Justice.  Seidel Decl. ¶ 9.  Plaintiff declined to do so. *Id.*

### B.    Status of Response to FOIA Request

Plaintiff's FOIA request was one of sixteen recent requests made to the FBI concerning Henry Kissinger.  Seidel Decl. ¶ 13.  These requests are actively being processed. *Id.*  The FBI conducted its search of the Central Records System (CRS) on December 8, 2023—*before* Plaintiff filed its complaint in this matter. *See id.* n.5.  To date, the FBI has identified approximately 7,900 responsive pages as a result of its search, the vast majority of which has already been imported into the FBI's FOIA Document Processing System for processing.  Seidel Decl. ¶ 14.  And release of records has already begun.

On May 15, 2024, the FBI made its first interim release of records to Plaintiff, and posted that production to the FBI's FOIA Library, known as The Vault.  Seidel Decl. ¶ 15 & Ex. D; *see also* FBI Records: The Vault, *Henry Kissinger*, https://vault.fbi.gov/henry-kissinger (last visited May 29, 2024).  For this first, May 2024, release, the FBI reviewed 506 pages of records. *See* Seidel Decl. ¶ 15.  The FBI anticipates continuing to review approximately 500 pages of material a month, and making additional releases of responsive documents which will be sent directly to Plaintiff and be posted on the FBI's Vault. *See* Seidel Decl. ¶ 16.

### C.   Procedural History

On December 10, 2023, Plaintiff filed the instant lawsuit.  *See* Dkt. No. 1.  On January 17, 2024, Plaintiff amended the complaint.  *See* Dkt. No. 15 ("Compl.").  Among other things, the Amended Complaint brings claims related to the denial of Plaintiff's request for expedited processing.  *See* Compl. ¶¶ 6-19.  On February 20, 2024, the parties appeared before this Court for an initial conference.  *See* Minute Entry Dated February 20, 2024.  At that conference, the Court ordered Plaintiff to file its motion for partial summary judgment on its expedited processing claim by March 5, 2024, pursuant to the schedule proposed by the parties.  *Id.; see also* Dkt. No. 18 at 2 (Parties' joint letter in advance of initial conference).  Plaintiff requested two extensions of time, and ultimately filed its motion for partial summary judgment on April 12, 2024.  *See* Dkt. No. 24 ("Pl's Br.").  Plaintiff also filed two additional motions on that date—a motion to compel the Government to seek an *Open America* stay, and a motion to expedite the case pursuant to 28 U.S.C. § 1657.  *See* Dkt. Nos. 25, 26.

The Government filed its opposition to the motion to expedite the case on May 17, 2024. Dkt. No. 31.  That same day, the Court denied Plaintiff's motion to expedite the case, finding that Plaintiff had "not shown that the requested information bears on current policy or legislative action," and observing that "Plaintiff's counsel requested the Court grant a 'lengthier-than-usual extension period' for briefing on Plaintiff's motion for summary judgment."  Dkt. No. 32.

The Government has filed a separate letter response to Plaintiff's motion to compel the Government to seek an *Open America* stay.  *See* Dkt. No. 35.  The Government now files this opposition to Plaintiff's motion for partial summary judgment on the FBI's denial of Plaintiff's request for expedited processing.

## STANDARD OF REVIEW

"Summary judgment is the procedural vehicle by which most FOIA actions are resolved." *Nat. Res. Def. Council v. Dep't of Interior*, 73 F. Supp. 3d 350, 355 (S.D.N.Y. 2014) (quotation marks omitted).[1]   "In resolving summary judgment motions in a FOIA case, a district court proceeds primarily by affidavits in lieu of other documentary or testimonial evidence." *Long v. Office of Personnel Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012). "Affidavits submitted by an agency are accorded a presumption of good faith." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994).  While in defending "withhold[ing of] records, 'the burden is on the agency to sustain its action,' . . . it is 'the person requesting the records' who must 'demonstrat[e] a compelling need' for expedition." *Al-Fayed v. C.I.A.*, 254 F.3d 300, 305 (D.C. Cir. 2001) (quoting 5 U.S.C. 552(a)); *see also Treatment Action Grp. v. Food & Drug Admin. & Dep't of Health & Hum. Servs.*, No. 15-cv-976 (VAB), 2016 WL 5171987, at *4 (D. Conn. Sept. 20, 2016) (recognizing that burden is on requestor to "'demonstrate[ ] a compelling need' for expedited processing"); *Wadelton v. Dep't of State*, 941 F. Supp. 2d 120, 122 (D.D.C. 2013) (explaining that "[t]he requestor bears the burden of proof" in expedited processing cases).

In reviewing the agency's decision on expedited processing, "[t]he standard of judicial review depends on the basis of the agency decision." *Oversight v. U.S. Dep't of Just.*, 292 F. Supp. 3d 501, 506 (D.D.C. 2018) (citing *Al–Fayed*, 254 F.3d at 307 n.7).  "Courts apply *de novo* review to" determinations based on "FOIA's 'compelling need' prong" and "grant deference" to

---

[1] Courts in this district have deemed the submission of statements pursuant to Local Rule 56.1 to be unnecessary in FOIA matters.  *See, e.g.*, *N.Y. Times Co. v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012) ("The general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment, and Local Civil Rule 56.1 statements are not required." (brackets and quotation marks omitted)); *accord N.Y. Legal Assistance Grp. v. BIA*, 401 F. Supp. 3d 445, 449 (S.D.N.Y. 2019).  In accordance with this practice, the Government has not submitted a Rule 56.1 statement in this matter.

the agency determinations based on additional criteria for expedition set forth in agency regulations. *Id.*

## ARGUMENT

### I.   LEGAL STANDARDS FOR FOIA PROCESSING

#### A.   FOIA Does Not Impose Specific Processing Deadlines

Under FOIA, an agency that has received a FOIA request is required, as relevant here, to "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request." 5 U.S.C. § 552(a)(6)(A)(i). The agency must "immediately notify the person making such request of . . . such determination and the reasons therefor," the right to appeal an adverse determination, and the right to seek certain assistance from the FOIA Public Liaison of the agency. *Id.* § 552(a)(6)(A)(i)(I)-(III).  FOIA further provides that a requester "shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions." *Id.* § 552(a)(6)(C)(i).

Thus, FOIA's 20-working-day time period does not create a deadline for production. *Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 189-90 (D.C. Cir. 2013) ("*CREW*").  Rather, "if the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." *Id.*  No other provision in FOIA creates a specific timeframe for the release of records.  *See* 5 U.S.C. §§ 552(a)(3)(A) (an agency shall make records responsive to a proper request "promptly available"), (a)(6)(C)(i) (same for litigated cases).

FOIA does permit certain requests to be prioritized above others; this is referred to as "expedited processing." 5 U.S.C. § 552(a)(6)(E).  To qualify for expedited processing, a requester must show either a "compelling need" (a term defined by the statute) or other criteria an agency

7

provides for by regulation.  *See* 5 U.S.C. § 552(a)(6)(E)(i).  But, as explained in the legislative history to the 1996 FOIA amendments that created FOIA's expedited processing provision, "[n]o specific number of days for compliance is imposed by the bill, since, depending upon the complexity of the request, the time needed for compliance may vary."  S. Rep. No. 104-272, at 17 (1996).  Even for requests as to which expedited processing is granted, moreover, "[t]he goal is not to get the request . . . processed within a specific time frame, but to give the request priority for processing more quickly than otherwise would occur."  *Id.*  Thus, even in cases of expedited FOIA processing, "[t]he statute does not assign any particular time frame to release of the records sought."  *Landmark Legal Found. v. E.P.A.*, 910 F. Supp. 2d 270, 275 (D.D.C. 2012); *see also* 5 U.S.C. § 552(a)(6)(E)(iii); *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 296 (D.D.C. 2013) ("the only relief required by the FOIA with regard to expedited processing is moving an individual's request 'to the front of the agency's processing queue'").

    **B.    The Standard for Expedited Processing**

    To qualify for expedited processing, a requester must show a "compelling need."  The statute defines two categories of "compelling need": (1) the requester must show either that failure to obtain the records on an expedited basis could reasonably be expected to pose an imminent threat to an individual's life or physical safety, 5 U.S.C. § 552(a)(6)(E)(v)(I); or (2) if the requester is "a person primarily engaged in disseminating information," it may show "urgency to inform the public concerning actual or alleged Federal Government activity," *id*. § 552(a)(6)(E)(v)(II); *see also* 28 C.F.R. § 16.5(e)(1)(i)-(ii).  The statute also provides that the agency may provide for expedited processing in its regulations "in other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i)(II).   DOJ FOIA regulations add two additional circumstances that warrant expedited processing: when the request involves "the loss of substantial due process rights," or concern "[a] matter of widespread and exceptional media interest in which there exist possible

questions about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e)(1)(iii)-(iv).

To determine whether a request should qualify for expedited processing based on a "compelling need," courts consider: "(1) 'whether the request concerns a matter of exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity.'" *Bloomberg L.P. v. U.S. Food & Drug Admin.*, 500 F. Supp. 2d 371, 377 (S.D.N.Y. 2007) (quoting *Al-Fayed*, 254 F.3d at 310); *see also Documented NY v. U.S. Dep't of State*, 20-CV-1946 (AJN), 2021 WL 4226239, at *3 (S.D.N.Y. Sept. 16, 2021). As Congress made clear, "[t]he public's right to know, although a significant and important value, would not by itself be sufficient to satisfy this standard." *Al-Fayed*, 254 F.3d at 310 (quoting H.R. REP. No. 104-795, at 26).

Courts have interpreted the "urgency to inform" requirement narrowly following Congress's explicit guidance when it passed the 1996 amendments providing for expedited processing. *See Al-Fayed*, 254 F.3d at 310 (citing H.R. REP. No. 104-795, at 26 (1996)). As Congress and courts have both recognized, if all requests were entitled to expedited processing, then prioritization would be meaningless. *See id.* ("Given the finite resources generally available for fulfilling FOIA requests, unduly generous use of the expedited processing procedure would unfairly disadvantage other requestors who do not qualify for its treatment . . . [and] would also disadvantage those requestors who do qualify for expedition, because prioritizing all requests would effectively prioritize none." (quoting H.R. REP. No. 104-795, at 26)).

The requester must show urgency to inform the public on the specific subject matter of the FOIA request, not a more general topic under which the request falls. *See, e.g.*, *Elec. Privacy Info. Ctr. ("EPIC") v. Dep't of Def.*, 355 F. Supp. 2d 98, 101-02 (D.D.C. 2004) (requester had not

shown entitlement to expedited processing by suggesting public interest in general topic of data mining, rather than the specific program to which the request related); *see also Progress v. Consumer Fin. Prot. Bureau*, No. 17-686 (CKK), 2017 WL 1750263, at *6 (D.D.C. May 4, 2017) (denying expedited processing where "Plaintiff has not explained why the specific records sought via the FOIA Requests are crucial to the alleged public debate over the Prepaid Rule…"); *Am. Civ. Liberties Union of N. Cal. v. Dep't of Justice*, No. C 04-4447 PJH, 2005 WL 588354, at *14 (N.D. Cal. Mar. 11, 2005) (reviewing cases).

Finally, even in cases where expedited processing is granted, the statute requires that records be processed "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii).  "This requirement does not impose on the agency 'any particular timeframe to release . . . the records sought' but rather 'moves the plaintiff's request 'to the front of the agency's processing queue.'" *Documented NY*, 2021 WL 4226239, at *2 (ellipses in original, quoting *Landmark Legal Found.,* 910 F. Supp. 2d at 275).  To determine what is "practicable," courts consider expedited FOIA requests the agency is already processing, the volume of requested materials, the demands of agency review, and competing obligations of the same agency staffers.  *See EPIC v. Dep't of Justice*, 15 F. Supp. 3d 32, 43 (D.D.C. 2014); *see also, e.g.*, *Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of State*, 300 F. Supp. 3d 540, 548 (S.D.N.Y. 2018) (evaluating what is "practicable" based on evidence from the agency about its general processing capabilities, other FOIA requests, and any national security concerns that limit processing speed); *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 302 (D.D.C. 2017) (similar); *see also Colbert v. Fed. Bureau of Investigation*, No. 16-cv-1790 (DLF), 2018 WL 6299966, at *3 (D.D.C. Sept. 3, 2018) (considering "the size and compelling need of the request compared to others, as well as the effect

of the request on the [agency's] ability to review other FOIA requests"); *Middle E. Forum v. U.S. Dep't of Homeland Sec.*, 297 F. Supp. 3d 183, 185 (D.D.C. 2018).

## II.    PLAINTIFF HAS NOT ESTABLISHED THAT IT IS ENTITLED TO EXPEDITED PROCESSING

Plaintiff has not met its burden to "demonstrate a compelling need" for expedited processing. *Al-Fayed*, 254 F.3d at 304. In its FOIA request, the reason that Plaintiff provided in support of the requested for expedited processing was the following:

> Rolling Stone, a well-recognized representative of the news media primarily engaged in the dissemination of information, is requesting these records to satisfy an urgent need to inform the public about actual or alleged federal government activity, namely, the activities of FBI and other agencies in which Kissinger, an extremely polarizing figure in many circles, played a direct or indirect role, or even those activities, like the Mueller Investigation, where FBI was looking into his activities. Kissinger's death and the opportunity it presents for obtaining these long-sought-after records are the very definition of a breaking news story which concerns a matter of current exigency to the public. Furthermore, the above reasons clearly demonstrate that this is a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.

Seidel Decl. Ex. A at 3. In essence, the basis provided by Plaintiff simply tracks the language of DOJ's FOIA regulations without providing any actual specifics as to the compelling need that would warrant expedited processing of the FOIA request, which seeks decades worth of historical material about an individual who passed away in November 2023.

The FBI examined Plaintiff's request for expedited processing under both the (1) "urgency to inform the public about actual or alleged Federal Government activity" and (2) the "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence" criteria set forth in the statute and DOJ's FOIA regulations. *See* Seidel Decl. ¶ 10; *id.* Ex. C. The FBI found that Plaintiff was not entitled to expedited processing of its FOIA request under either standard, as it had not provided enough information concerning the statutory requirements for expedition. *Id.*

**A.      Plaintiff Has Not Shown An Urgency To Inform The Public About Actual Or Alleged Government Activity.**

In denying Plaintiff's request for expedition on the basis of an urgency to inform the public under 5 U.S.C. § 552(a)(6)(E)(v)(II), the FBI reasonably concluded that Plaintiff "gave only conclusory statements that tracked the that tracked the language of the Department of Justice FOIA regulations and did not provide sufficient information on why the death of this individual, potentially rendering certain privacy exemptions diminished, created an urgent need to inform the public on past government activity." Seidel Decl. ¶ 11.[2]  Plaintiff's FOIA request seeks historical FBI records about an individual whose involvement in the United States Government commenced in the 1960s. *See id.* Ex. A*; see also* https://www.washingtonpost.com/obituaries/2023/11/29/henry-kissinger-dead-obituary/ (cited in FOIA request).  While Plaintiff's FOIA request references Mr. Kissinger's purported continued interactions with U.S. Government officials that were allegedly uncovered during the course of the Mueller Investigation, *see* Seidel Decl. Ex. A. at 3, the report of that investigation was released in March 2019—more than four and a half years before Plaintiff's FOIA request, *see Report On The Investigation Into Russian Interference In The 2016 Presidential Election*, Special Counsel Robert S. Mueller, III, available at https://www.justice.gov/archives/sco/file/1373816/dl (last accessed May 29, 2024).

In its motion papers, Plaintiff speculates that there are "likely records of other comparable interactions in FBI's files that are not publicly known," Pl's Br. 6, and seeks to put the burden on the FBI to tell Plaintiffs what types of files it has so that it can "gauge the newsworthiness," *id.* 7 n.2, however, nothing in FOIA supports such a fishing expedition for urgency.  The burden is on

---

[2] The FBI determined that Plaintiff had met its burden in establishing that it was a member of the news media primarily engage in disseminating information.  *See* Seidel Decl. ¶ 11.

the Plaintiff to establish that its FOIA request is entitled to expedited processing, which it has failed to do. *Al-Fayed*, 254 F.3d at 305. In its motion papers, Plaintiff further cites to a news story about Mr. Kissinger's trip to China in July 2023—more than 10 months ago—and a news story about how Mr. Kissinger became an American Citizen—more than 80 years ago. *See* Pl's Br. 6-7. But even if these news articles were relevant, which they are not, as Plaintiff itself argues, *see* Pl's Br. 10-12, the Court's review is limited to "the record before the agency at the time of the determination." 5 U.S.C. § 552(a)(6)(E)(iii).[3]

In any event, Plaintiff has not shown how FBI records pertaining to a historical figure whose involvement in United States government affairs commenced more than 80 years ago, even if he did continue speaking with Government officials until his death in November 2023, is the type of "currently unfolding story" for which expedited processing is reserved. *Al-Fayed*, 254 F.3d at 310 ("Although these topics may continue to be newsworthy, none of the events at issue is the subject of a currently unfolding story."); *see also Documented NY*, 2021 WL 4226239, at *3 ("While the Court agrees that, as Plaintiff has shown, Proclamation 9945 is both newsworthy and of importance to the general public, Plaintiff's request likely does not implicate the level of

---

[3] Plaintiff's attempt to use this provision as a basis to require the FBI to produce an administrative record of its internal deliberations and to shift the burden onto the FBI is unfounded. *See* Pl's Br 10-12. The "record before the agency" means what *the requestor* submitted supporting its request for expedition. *See, e.g., Progress*, 2017 WL 1750263, at *4 ("[T]he Court's determination of whether Plaintiff qualifies as a person primarily engaged in information dissemination is based solely on the record before the [agency] at the time it denied Plaintiff's request for expedited processing. That record consists solely of the FOIA Requests themselves."). As courts have repeatedly made clear, the burden is on the requestor to establish that it is entitled to expedited processing, not on the agency to establish why the requestor is not entitled to such treatment. *See, e.g., Energy Pol'y Advocs. v. U.S. Dep't of the Interior*, No. CV 21-1247 (JEB), 2021 WL 4306079, at *5 (D.D.C. Sept. 22, 2021) (rejecting FOIA requestor's argument that it was "entitled to summary judgment because Interior provided no substantive explanation for denying the request to expedite" and explaining that this argument "ignores the reality that [the requestor] 'bears the burden of showing that [it] is entitled to expedited processing'" and that "the agency's explanation (or lack thereof) did not cause Plaintiff any prejudice").

exigency necessary to compel expedited processing."); *Treatment Action Grp.*, 2016 WL 5171987, at *9 ("[T]here was no longer an sense of urgency or urgent need to inform the public regarding the FDA's actions from two months to a year before the Plaintiffs made their initial [FOIA] request."); *Wadelton*, 941 F. Supp. 2d at 123 (collecting cases); *Tripp v. Dep't of Def.*, 193 F. Supp. 2d 229, 242 (D.D.C. 2002) (noting that "there is no 'urgent need' for this information" as "[t]he events at issue occurred over three years ago" and "are not the subject of any breaking news story"). Thus, Plaintiff has established neither that the "the request concerns a matter of exigency to the American public" nor that "the consequences of delaying a response would compromise a significant recognized interest." *Bloomberg*, 500 F. Supp. 2d at 377.[4]

To the extent that Plaintiff is arguing that Mr. Kissinger's death itself that creates the urgency, Plaintiff has not shown how something in the FBI records that it seeks would provide any insights *into that event*. *Cf. Elec. Priv. Info. Ctr.*, 355 F. Supp. 2d at 102 ("The case law makes it clear that only public interest in the specific subject of a FOIA request is sufficient to weigh in favor of expedited treatment."). Instead, it appears that Plaintiff is arguing that Mr. Kissinger's death presents an "opportunity . . . for obtaining . . . long-sought-after records," Seidel Decl. Ex. A at 3. Presumably Plaintiff is referring to the fact that the death of an individual could potentially diminish certain privacy FOIA exemptions applicable to the documents sought. *See* Seidel Decl. ¶ 11. This, however, does not change the fact that the events to which the requested records pertain occurred years, if not decades, ago, and are simply not the subject of a currently unfolding news story. Thus, the FBI properly denied Plaintiff's request for expedition on the basis of an urgency to inform the public.

---

[4] Presumably many of the records responsive to the FOIA request will relate to the time period in the 1960s and 1970s when Mr. Kissinger was a government official, accordingly at least some of the records at issue "concern[] federal government activity.'" *Bloomberg*, 500 F. Supp. 2d at 377.

**B.**     **Plaintiff Has Not Shown that the FOIA Request Seeks Records Related to A Matter of Widespread and Exceptional Media Interest in Which There Exist Possible Questions About the Government's Integrity That Affect Public Confidence**

The FBI likewise reasonably concluded that Plaintiff had not provided enough information to establish that the records sought relate to a "matter of widespread and exceptional media interest in which there exist possible questions about the Government's integrity which affect public confidence," pursuant to the DOJ regulations. *See* Seidel Decl. ¶ 12 & Ex. C.  With respect to this criteria, Plaintiff's FOIA request likewise only made a conclusory statement that tracked the language of the regulation. *Id.* Ex. A at 3.

In order to establish an entitlement to expedition on the basis of subsection (iv) of the DOJ FOIA regulations, the requestor must show *both* that the matter at issue in the FOIA request "draws widespread and exceptional media interest" and that "the matter [is one] in which there exists possible questions about the Government's integrity that affect public confidence."  *Oversight*, 292 F. Supp. 3d at 506.  As discussed above, Plaintiff has failed to establish that the records sought by its FOIA request are currently the subject of "widespread and exceptional media interest."  *See* II.A. *supra*.    Moreover, Plaintiff offers nothing but speculation that the records sought raise questions about Government integrity that affect public confidence.

In its brief, Plaintiff asserts that Mr. Kissinger was a highly polarizing figure in the United States citing a 2020 article[5] and the obituary published by Plaintiff referring to Kissinger as a "war criminal," vaguely refers to Special Counsel Muller's investigation, and quotes a public Statement

---

[5] The article is not about Henry Kissinger, but about "why songwriter Tom Lehrer has remained silent for 33 years"—which only reinforces the historical nature of the events at issue in the FBI records sought by Plaintiff's FOIA request.  *See* "When Kissinger won the Nobel peace prize, satire   died,"   *The   Guardian*   (July   30,   2000),   available   at https://www.theguardian.com/culture/2000/jul/31/artsfeatures1 (last accessed May 29, 2024).

by Secretary of State Blinken made upon Mr. Kissinger's death—claiming that these events raise "possible" questions about the "Government's integrity." *See* Pl's Br. 8-10. Such conjecture is insufficient to establishing an entitlement to expedited processing on the basis of "possible questions about the Government's integrity that affect public confidence." *See, e.g., Oversight*, 292 F. Supp. 3d at 508 (finding that DOJ had "correctly concluded that plaintiff had met its burden of showing that there was the necessary media interest concerning General Francisco's nomination, but that none of the articles raised any ethical issues concerning his nomination, or his work in the Solicitor General's Office, or for Jones Day," and upholding denial of expedited processing"); *EPIC v. U.S. Dep't of Justice*, 322 F. Supp. 2d 1, 5–6 (D.D.C. 2003) ("As for 'possible questions about the government's integrity,' . . . [plaintiff] placed nothing before [the agency] except" a single *New York Times* editorial, which failed to raise ethical issues sufficient to affect public confidence), *vacated as moot* Civ. No. 04-5063, 2004 WL 2713119 (D.C. Cir. Nov. 24, 2004).

The explanation provided by the requestor in *CREW v. U.S. Department of Justice*, on which Plaintiff relies heavily in its brief, *see* Pl's Br. 10-11, stands in stark contrast to what Plaintiff has put forth in this case. In *CREW* the court explained:

> CREW stated in its request that the Attorney General of the United States had mischaracterized some of the core conclusions contained in a report of great public significance, written by the Department's own duly appointed Special Counsel, in advance of its public release. CREW's submission supported an inference that at best, the Attorney General undertook to frame the public discussion on his own terms while the report itself remained under wraps, and at worst, that he distorted the truth.

436 F. Supp. 3d 354, 361 (D.D.C. 2020). Plaintiff has not made any similar assertions here that raise questions about currently ongoing government activity that would affect the public's confidence in the United States government.

Accordingly, the FBI properly concluding that Plaintiff had failed to establish an entitlement to expedited processing of its request on this basis.

### III.    THE FBI IS ALREADY PROCESSING PLAINTIFF'S FOIA REQUEST

Even if Plaintiff were able to establish an entitlement to expedited processing, which as discussed above it has not done, the relief it would obtain is that "the agency "shall process [the request] as soon as practicable." 5 U.S.C. § 552(a) (6)(E)(iii).  This requirement does not impose on the agency "any particular timeframe to release . . . the records sought" but rather "moves the plaintiff's request 'to the front of the agency's processing queue.'" *Documented NY*, 2021 WL 4226239, at *2 (quoting *Landmark Legal Found*, 910 F. Supp. 2d at 275).  Here, processing of the request is already underway, and the FBI has already begun its monthly productions in response to the FOIA request.  Thus, the very thing that Plaintiff would be entitled to is already happening.

This case is unlike *Treatment Action Group,* on which Plaintiff relies to dispute the mootness of its request, *see* Pls' Br. 3, in which the District of Connecticut found the expedited processing request not to be moot because "Plaintiffs remain[ed] unsatisfied with Defendants' proposed schedule of production and [sought] additional relief from the Court." *Treatment Action Grp.,* 2016 WL 5171987, at *5.  Here, Plaintiff does not challenge the rate at which the FBI is processing records in response to the FOIA request.  *See* Dkt. No. 25 at 4 ("Rolling Stone is *not* asking the Court . . .  to order FBI to process responsive records at any particular rate, nor is it even asking the Court to deny an FBI motion for leave to proceed at its standard 500 pages/month rate." (emphasis in original)).  Moreover, as the D.C. Circuit recognized, the policy of "processing requests in 500–page increments [] ultimately 'provides more pages to more requesters,' avoiding situations in which 'a few, large queue requests monopolize finite processing resources.'" *Nat'l Sec. Counselors v. U.S. Dep't of Justice ,* 848 F.3d 467, 471-72 (D.C. Cir. 2017) (quoting FBI declaration).   The FBI's processing rate is well within the processing rates required by courts in

this district. *See, e.g., N.Y. Times Co. v. Dep't of Def.,* No. 19-CV-9821 (VSB), 2022 WL 1547989, at *3 (S.D.N.Y. Apr. 21, 2022) (ordering agency to "review records for production at a rate of a minimum of 500 pages every 60 days"). Because Plaintiff's request for expedited processing would have no practical impact, the Court should deny the request.

## CONCLUSION

The Court should deny Plaintiff's partial motion for summary judgment.

Dated: May 29, 2024
  New York, New York

            Respectfully submitted,

            DAMIAN WILLIAMS
            United States Attorney for the
            Southern District of New York

By:   /s/
            DOMINIKA TARCZYNSKA
            DANIELLE J. MARRYSHOW
            Assistant United States Attorneys
            Tel. (212) 637-2748/2689
            Fax (212) 637-2686/2750
            dominika.tarczynska@usdoj.gov
            danielle.marryshow@usdoj.gov
            *Attorney for Defendant*