## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

ROLLING STONE, LLC,        *

                        *

    Plaintiff,          *

                        *

    v.               *      Civil Action No. 1:23-cv-10741 (LJL)

                        *

DEPARTMENT OF JUSTICE,     *

                        *

    Defendant.         *

                        *

*   *   *   *   *   *   *   *   *   *   *   *   *

## PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
## FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Rolling Stone, LLC ("Rolling Stone") commenced this litigation pursuant to the Freedom of Information Act ("FOIA") to obtain copies of Federal Bureau of Investigation ("FBI")[1] records discussing former United States Secretary of State Henry Kissinger ("Kissinger"). After Rolling Stone filed a Motion explaining why it is entitled to expedited processing of its request, FBI attempts to defend its refusal to grant Rolling Stone's request, all while conflating various issues and relying on implications and suggestions. For the reasons demonstrated herein and in Rolling Stone's Motion, the Court should grant partial summary judgment to Rolling Stone on Count 1 and order FBI to process its FOIA request in an expedited fashion.

## ARGUMENT

In the interest of judicial economy, Rolling Stone will not repeat herein most of the arguments that it previously made in its Motion, because FBI failed for the most part to present

---

[1] FBI will be treated as the Defendant herein for ease of reference even though the Department of Justice is the proper party Defendant.

any arguments sufficient to refute them. Instead, to keep this Reply succinct, Rolling Stone will briefly respond to the particular points which warrant a more detailed response, in roughly the order in which they appear.[2]

## I.  FBI'S SHIFTING EXPLANATIONS

As an initial matter, it is important to note the degree to which FBI is attempting to have it both ways in this case, first complaining about how broad and unfocused Rolling Stone's request was in an attempt to earn the Court's sympathy, then reversing course and implying that the records are being processed quickly anyway in an attempt to encourage the Court to find that this Motion is effectively moot. First, one need only consider the myriad ways in which FBI paints a picture of a massive request that any agency would be struggling to process:

- "On its face, this request seeks decades worth of historical records about an individual who served as Foreign Policy Advisor and Secretary of State in the 1960s and 1970s." (Def.'s Mem. Law Opp'n Pl.'s Mot. Part. Summ. J., Dkt. #36, at 1 (filed May 29, 2024) [hereinafter FBI's Opp'n].)

- "Plaintiff sought expedited processing of its immense FOIA request." (*Id.*)

- "The FOIA request contained no date range limiting the files that Plaintiff was requesting be searched." (*Id.* at 2.)

- "On its face therefore, Plaintiff's FOIA request seeks decades of historical documents." (*Id.* at 3.)

---

[2] Rolling Stone's decision to follow the course of FBI's Opposition should not be interpreted as a concession that FBI has properly framed the issues; it is solely to assist the Court in matching FBI's arguments with Rolling Stone's counterarguments. Similarly, if Rolling Stone does not address an argument raised by FBI herein, that is simply an indication that it stands behind the corresponding argument in its Motion, since it is attempting not to repeat itself unnecessarily.

According to these sentences, Rolling Stone is seeking a mountain of records that will take an inordinate amount of time to process, which, according to FBI, redounds in its favor. (*See id.* at 10 (describing role "the volume of requested materials" and "the size . . . of the request compared to others" plays in determining what "as soon as practicable" means).)

However, as noted below, FBI is also arguing that this Motion is effectively moot because it is already processing responsive records, which, according to FBI, means that "Plaintiff's request for expedited processing would have no practical impact." (*Id.* at 18.) And in a bid to avoid justifying its processing rate, FBI separately informed this Court that it is not attempting to delay the filing of a summary judgment motion past December 2024 (Ltr. Opp'n, Dkt. #35, at 3 (filed May 29, 2024)), which would necessarily mean that it would be done processing responsive records by that time. The clear implication of FBI's contentions in this regard is that granting expedited processing would be a waste of time because FBI will be done processing the records in six months anyway. So FBI abruptly reverses course and states that it has only identified 7,900 responsive pages, "the vast majority of which has already been imported into the FBI's FOIA Document Processing System for processing." (FBI's Opp'n at 4.) This simple statement unravels FBI's insinuations of burden and demonstrates only that FBI will make any claim necessary to win this argument, even when there is no basis in fact.

By the same token, the Court should take notice of the possibility that FBI has already *effectively* granted Rolling Stone's request for expedited processing and is only quibbling over semantics to obtain a litigation advantage. FBI states that it conducted a search for responsive records on 8 December 2023—*nine days after Rolling Stone submitted the request*. (*Id.*) At the end of Fiscal Year 2023, FBI had 6,727 backlogged requests in its first-in, first-out queue. DOJ, *United States Department of Justice Annual Freedom of Information Act Report: Fiscal Year*

*2023* 65, *at* https://www.justice.gov/d9/2024-

02/DOJ%20FY23%20FOIA%20Agency%20Overall%20Report%20-

%202023%20final%20for%20posting_0.pdf (last accessed June 19, 2024). Simply put, an

agency with a backlog of almost 7,000 requests does not conduct a search for a request in the

complex queue nine days after receiving the request and start releasing records less than six

months later, but an agency might do so for an *expedited* request. Since the Court is required to

afford a presumption of good faith to an agency declaration, it should find that FBI has been

treating this request as an expedited request in all but name from the outset and is simply

resisting formally "granting expedited processing" for unclear reasons.[3] The Court should

accordingly refuse to play along with FBI's fiction and either order FBI to formally grant Rolling

Stone's request for expedited processing or find that FBI has already informally granted that

request and order FBI to treat the request as formally expedited going forward.

## II.    ROLLING STONE DEMONSTRATED A COMPELLING NEED UNDER THE FIRST TEST

In attempting to argue that Rolling Stone has not satisfied the first test for compelling

need, FBI misrepresents the nature of both the request and the relevant legal framework. Its first

attempt to muddy the waters comes in the form of mischaracterizing a suggestion that the Court

might choose to follow the lead of another court in this District and consider ordering

"[p]iecemeal production of documents according to the urgency of need for them," *Ferguson v.

FBI*, 722 F. Supp. 1137, 1143 (S.D.N.Y. 1989)—which would essentially be the same as

granting expedited processing for some records and not for others—as "seek[ing] to put the

---

[3] The only other explanation in most circumstances would be that the request was placed in the accelerated "Litigation Queue," but that explanation is foreclosed by FBI's insistence that it conducted the search "*before* Plaintiff filed its complaint in this matter." (FBI's Opp'n at 4 (emphasis in original).) The uncertainty on this issue provides the Court another reason to insist on reviewing the full administrative record.

burden on the FBI to tell Plaintiffs what types of files it has so that it can 'gauge the

newsworthiness.'" (FBI's Opp'n at 12.) Not only is this a transparent misreading of Rolling

Stone's Motion, but the conclusion it leads to also ignores the legal framework around expedited

processing.

FBI argues without citation that "nothing in FOIA supports such a fishing expedition for

urgency," (*id.*), but it omits the fact that agencies often grant expedited processing for parts of

FOIA requests. *See*, *e.g.*, *Brennan Ctr. for Justice at NYU Sch. of Law v. DOC*, 498 F. Supp. 3d

87, 98 (D.D.C. 2020) (describing case where agency initially granted expedited processing for

three parts of a four-part request). Rolling Stone admits that not every record about Kissinger

will be of extraordinary public interest, and it is open to an order directing FBI to expedite the

processing of some responsive records and not others if the Court is so inclined. However,

because of FBI's policy of categorically denying requests for living third parties, Rolling Stone

cannot break the request into separate parts for specific types of records because it does not know

what specific types of records FBI *has*. Therefore, if the Court is inclined to do what is "common

in court ordered schedules for responses to FOIA requests" and order "[p]iecemeal production of

documents according to the urgency of need for them," *Ferguson*, 722 F. Supp. at 1144, it

necessarily needs to first order FBI to provide descriptions of the types of records so that Rolling

Stone can prioritize them accordingly and the Court can intelligently evaluate those priorities.

FBI then quibbles with the examples Rolling Stone provided of media interest, criticizing

Rolling Stone for citing to a news story about a trip to China "more than 10 months ago" and

another story about "how Mr. [sic] Kissinger became an American Citizen—more than 80 years

ago." (FBI's Opp'n at 13.) These complaints are frivolous. With respect to the first objection,

FBI appears to be complaining that proof that there was significant media interest in a person

four months before his death does not mean that there would be similar interest *after* his death, which begs the question, what stories about his activities after his death does FBI think would be acceptable? With respect to the second question, it grossly misrepresents the argument by focusing on the wrong date. Rolling Stone did not provide that example to show that Kissinger's naturalization was breaking news eighty years ago; it provided it to show that journalists were writing stories about 80-year-old Kissinger records *three months ago*, well after it filed the FOIA request.[4]

FBI then briefly attempts to dissuade the Court from even considering these news articles, while simultaneously arguing that it should not be required to provide the full administrative record so that the Court can reach an informed conclusion. (*Id.* at 13 n.3.) While FBI offers District of Columbia cases in support of its claims, Kissinger relies on cases from the Eastern and Southern Districts of New York, the Middle District of Florida, *and* the District of Columbia. The Court should find that the weight of authority strongly favors Rolling Stone in this regard and should accordingly take judicial notice of the publication of all of these articles.[5]

---

[4] FBI later statement that Kissinger was "a historical figure whose involvement in United States government affairs commenced more than 80 years ago" (*id.*), while technically correct, is pure hyperbole, since it treats his Army basic training when he was twenty years old as the beginning of his "involvement in United States government affairs."

[5] Additionally, the Court should take judicial notice of the fact that Rolling Stone itself has already begun to publish articles about the records it has received in this case, despite FBI's attempt to disincentivize it from doing so by making the records publicly available at the same time as it releases them to Rolling Stone, thereby depriving it of any scoops in the released information. The extent to which even the historical records released thus far are already changing the public's understanding of Kissinger and his role in the Government can be seen in the first such article. For example, these records demonstrate the extreme deference afforded to Kissinger by successive administrations regarding access to classified information despite well-documented concerns about allegations of ethical issues, including the unlawful wiretapping of a subordinate. Adam Rawnsley, *Rolling Stone Lawsuit Forces Release of Henry Kissinger's FBI Files* Rolling Stone (June 21, 2024), *available at* https://www.rollingstone.com/politics/politics-news/henry-kissinger-fbi-files-rolling-stone-lawsuit-1235044982/ (last accessed June 21, 2024).

FBI completes its broadside against Rolling Stone's request by arguing that the "specific

subject of [the] FOIA request"—which is what there must be widespread public interest in, is

Kissinger's death itself. (*Id.* at 14.) This is a nonsensical reading of a straightforward request.

Kissinger's death was the *catalyst* for Rolling Stone's request, but the request was not for records

about his death; it was for records about *him*. His death did not "create[] the urgency" as FBI

maintains (*id.*); it only created the *opportunity*.

## III.   ROLLING STONE DEMONSTRATED A COMPELLING NEED UNDER THE SECOND TEST

FBI's argument that Rolling Stone failed to satisfy the second test is even flimsier than

the argument above. It quibbles with what it describes as "speculation" about the Government's

integrity (*id.* at 15-16), ignoring that the standard is only that there exist "*possible* questions

about the government's integrity," not "actual existing questions about the government's

integrity." 28 C.F.R § 16.5(e)(1)(iv) (emphasis added). There is not—nor could there logically

be—a requirement that a plaintiff must show that people are already questioning the

Government's integrity; the regulation only requires that the plaintiff show that people *might*

question it. Any discussion of "possible" questions is by definition speculation, and the Court

should not allow FBI to write a new requirement into the existing regulation.

Similarly, the Court should decline FBI's invitation to read into this regulation a

requirement that the possible questions must pertain to "currently ongoing government activity"

(FBI's Opp'n at 16), since that would prove to be a practically impossible standard to satisfy.

FOIA requests are filed for existing records. Existing records were created before the FOIA

requests were filed. Records created before the FOIA requests were filed pertained to

government activity that was taking place in the past. Vanishingly few records created in the past

would pertain to ongoing activity in the present. If the Court adopts FBI's reading of the

regulation, it would render the regulation completely within the agency's discretion and practically unenforceable in court.

## IV.      THE MOTION IS NOT MOOT

Rolling Stone has already refuted FBI's argument that expedited processing only moves the request to the front of the processing queue and will not repeat itself here. FBI attempts to bolster its argument by quoting a line out of context from Rolling Stone's motion to compel it to request an *Open America* stay, in which Rolling Stone stated that it was not *at that time* seeking to challenge FBI's processing rate. (*Id.* at 17 (quoting Dkt. #25 at 4).) However, Rolling Stone's statement of the scope of *that* motion has no bearing on *this* Motion. To clarify, Rolling Stone was not *in that motion* asking the Court to opine on FBI's processing rate because *that motion* was solely an attempt to compel FBI to request an *Open America* stay supported by a declaration defending the need for the stay. After FBI filed such a motion, Rolling Stone would be in a position to make an informed decision about whether or not to challenge the processing rate or the stay request writ large. Similarly, Rolling Stone would likely not raise such a challenge with this Court before learning if this Court believed that its request warranted expedited processing. FBI asks this Court to uncritically accept the premise that Rolling Stone and its undersigned counsel—a FOIA litigator with sixteen years of experience—would expend significant time and energy filing and briefing multiple motions with absolutely no intention of using any of the rulings to challenge the agency's lethargic processing of records of extraordinary media interest, when the obvious answer is that Rolling Stone is making the best case it can, using all of the legal resources at its disposal, against an intransigent agency that refuses to commit to any course of action.

**CONCLUSION**

Rolling Stone has demonstrated that it has a compelling need to be granted expedited

processing for its FOIA request. For the reasons described above and in its initial Motion,

Rolling Stone is entitled to partial summary judgment on Count 1 and an order directing FBI to

process its request as soon as practicable.

Date:   June 21, 2024

Respectfully submitted,

__/s/ Kelly B. McClanahan_
Kelly B. McClanahan, Esq.
S.D.N.Y. Bar #KM1958
National Security Counselors
4702 Levada Terrace
Rockville, MD  20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff*