```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
ROLLING STONE LLC,                                               :
                                                                 :
                                Plaintiff,                       :
                                                                 :      23-cv-10741 (LJL)
                -v-                                              :
                                                                 :      OPINION AND ORDER
DEPARTMENT OF JUSTICE,                                           :
                                                                 :
                                Defendant.                       :
                                                                 :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/08/2024

LEWIS J. LIMAN, United States District Judge:

Plaintiff Rolling Stone, LLC ("Plaintiff" or "Rolling Stone") moves, pursuant to Federal Rule of Civil Procedure 56, for an order granting it partial summary judgment on Count 1 of its First Amended Complaint ("FAC"), seeking expedited processing of its request for agency records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. *See* Dkt. No. 24.

For the reasons that follow, Plaintiff's motion is denied.

## BACKGROUND

The principal question raised by this case is whether information about a public official who is of immense and unquestioned historical interest also necessarily implicates matters of current exigency to the American public or of widespread and exceptional media interest so as to require expedited processing under the FOIA.

Plaintiff is a business headquartered in New York City that publishes *Rolling Stone* magazine, one of the most well-known magazines in the United States. Dkt. No. 15 ¶ 3.[1] The

---

[1] The Court accepts the undisputed allegations of Plaintiff's complaint as true for the purposes of this motion. *See Bloomberg, L.P. v. U.S. Food & Drug Admin.*, 500 F. Supp. 2d 371, 373 n.1 (S.D.N.Y. 2007) (accepting undisputed allegations of complaint as true for purposes of FOIA summary judgment motion). Neither party submitted a statement of material facts pursuant to

Defendant is the United States Department of Justice ("DOJ" or the "Department"), an agency within the meaning of 5 U.S.C. § 552(e). *Id.* ¶ 4.

On November 30, 2023, Rolling Stone submitted a FOIA request to the Federal Bureau of Investigation ("FBI"), which is a component of DOJ. Dkt. No. 37 ¶ 5. Rolling Stone requested "all FBI records about Henry Kissinger" without any date limitation. Dkt. No. 37-1; Dkt. No. 24-1. Rolling Stone instructed, "[t]his may not be limited to 'main file records' or records located in the CRS," and that "[i]n addition to searching the CRS for cross-references, we specifically request all information about Kissinger located by a full-text search of Sentinel as well as all email records in the New York and Washington Field Offices which contain the word 'Kissinger.'" Dkt. No. 37-1. Rolling Stone cited to an obituary for Kissinger in the Washington Post and referenced Kissinger's prominence and "the fact that he continued to interact with the highest levels of the U.S. government until his death." *Id.*

Rolling Stone also asked for expedited processing of its request. Its reason for expedited processing was stated as follows in full:

> Rolling Stone, a well-recognized representative of the news media primarily engaged in the dissemination of information, is requesting these records to satisfy an urgent need to inform the public about actual or alleged federal government activity, namely, the activities of FBI and other agencies in which Kissinger, an extremely polarizing figure in many circles, played a direct or indirect role, or even those activities, like the Muller Investigation, where FBI was looking into his activities. Kissinger's death and the opportunity it presents for obtaining these long-sought-after records are the very definition of a breaking news story which concerns a matter of current exigency to the public. Furthermore, the above reasons clearly demonstrate that this is a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.

*Id.*

---

Local Rule 56.1 on the basis that such statements are not required in a FOIA case. *See* Dkt. No. 24 at ECF P. 1; Dkt. No. 36 at 6.

The FBI acknowledged receipt of Plaintiff's FOIA request by letter dated December 11, 2023, and advised that responsive records would be posted to the FBI's electronic FOIA library. Dkt. No. 37-2.

By letter dated January 11, 2024, the FBI denied Plaintiff's request for expedited processing. Dkt. No. 37-3. The FBI acknowledged that Plaintiff had requested expedited processing based on the claims that there was an urgency to inform the public about an actual or alleged federal government activity, made by a person primarily engaged in disseminating information and that the request concerned a matter of widespread and exceptional media interest in which there existed possible questions about the government's integrity which affect public confidence. *Id*. But the FBI informed Plaintiff: "You have not provided enough information concerning the statutory requirements for expedition; therefore, your request is denied." *Id.* Defendant advised Rolling Stone of its rights to administratively appeal Defendant's determination. *Id.*[2]

The FBI currently is actively working to process records responsive to Plaintiff's FOIA request and has assigned a disclosure analyst to it for processing. Dkt. No. 37 ¶ 13.[3] The FBI has searched all locations and files reasonably likely to contain responsive records and, to date, based on its search of both main and reference entities in its Central Records System ("CRS"), it has identified approximately 7,900 responsive pages, with additional file reviews ongoing. *Id.* ¶ 14. Approximately 6,000 of those potentially responsive pages have been imported into the

---

[2] Courts have held that a FOIA requestor is not required to exhaust administrative remedies when challenging a denial of expedited processing. *See Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 436 F. Supp. 3d 354, 359 (D.D.C. 2020) (citing cases); *Am. Civ. Liberties Union v. U.S. Dep't of Just.*, 321 F. Supp. 2d 24, 28 (D.D.C. 2004).
[3] Plaintiff's FOIA request was one of sixteen recent requests made to the FBI concerning Henry Kissinger. *Id*. The searches were not made exclusively in response to Plaintiff's request. *Id* ¶ 13 n.5.

3

FBI's FOIA Document Processing System for processing so far. *Id*. By letter dated May 15, 2024, the FBI made its first interim release of records to Plaintiff. *Id.* ¶ 15. It reviewed 506 pages and released 392 pages in full or in part. *Id.* The FBI anticipates making additional interim releases where it will review approximately 500 pages per month. *Id.* ¶ 16.[4]

## PROCEDURAL HISTORY

Plaintiff initiated this case by complaint filed on December 10, 2023. Dkt. No. 1. On January 17, 2024, after Defendant's denial of the request for expedited processing, Plaintiff filed the FAC. Dkt. No. 15.

Plaintiff filed this motion for partial summary judgment, with an accompanying memorandum of law, on April 12, 2024. Dkt. No. 24. Defendant filed a memorandum of law and declaration in opposition to the motion on May 29, 2024. Dkt. Nos. 36–37. Plaintiff filed a reply memorandum in further support of the motion on June 21, 2024. Dkt. No. 41.

## DISCUSSION

FOIA provides that each agency receiving a request "shall determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request" and shall immediately notify the person making the request of the agency's "determination and its reasons therefor." 5 U.S.C. § 552(a)(6)(A)(i). Such twenty-day time period may be extended by written notice in "unusual circumstances," defined to include "the need to search for and collect the requested records from the field facilities or other establishments that are separate from the office processing the request," "the need to search for, collect, and appropriately examine a voluminous amount of separate and

---

[4] Defendant is still processing and responding to Plaintiff's FOIA requests. Accordingly, it appears that the request for expedited processing is not moot. *Compare Khan v. U.S. Dep't of Homeland Sec.*, 2023 WL 6215359, at *6 (D.D.C. Sept. 25, 2023); *Liberation Newspapers v. U.S. Dep't of State*, 80 F. Supp. 3d 137, 141 n.2 (D.D.C. 2015).

4

distinct records which are demanded in a single request," and "the need for consultation, which shall be conducted with all practicable speed, with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein." 5 U.S.C. § 552(a)(6)(B).

FOIA also provides for expedited processing in certain limited circumstances. Section 552(a)(6)(E)(i) provides in pertinent part:

> (i) Each agency shall promulgate regulations, pursuant to notice and receipt of public comment, providing for expedited processing of requests for records—(i) in cases in which the person requesting the records demonstrates a compelling need; and (ii) in other cases determined by the agency.

5 U.S.C. § 552(a)(6)(E)(i). FOIA goes on to provide:

> (v) For purposes of this subparagraph, the term "compelling need" means—
>
> (i) that a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or
>
> (ii) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.

5 U.S.C. § 552(a)(6)(E)(v).

DOJ has promulgated regulations that address the circumstances under which it will process a FOIA request on an expedited basis. In addition to the two grounds set forth in the statute, DOJ's regulations provide that it will process a request on an expedited basis if it involves "[t]he loss of substantial due process rights" or "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e) (1)(iii), (iv).

FOIA does not set a specific timetable for the processing or production of records to which expedited processing is accorded. "[A]n award of expedited processing only moves the

5

plaintiff's request 'to the front of the agency's processing queue, as provided by FOIA, and require[s] that they be processed "as soon as practicable."'" *Landmark Legal Found. v. E.P.A.*, 910 F. Supp. 2d 270, 275 (D.D.C. 2012) (quoting *Leadership Conference on Civ. Rights v. Gonzales,* 404 F.Supp.2d 246, 259–60 (D.D.C. 2005)); *see* 5 U.S.C. § 552(a)(6)(E)(iii) (the obligation of the agency is to "process as soon as practicable any request for records to which the agency has granted expedited processing"); *Documented NY v. U.S. Dep't of State*, 2021 WL 4226239, at *2 (S.D.N.Y. Sept. 16, 2021) (Nathan, J.).

The burden of proof is on the requestor to establish a basis for expedited processing. *See Energy Pol'y Advocs. v. U.S. Dep't of the Interior*, 2021 WL 4306079, at *5 (D.D.C. Sept. 22, 2021); *Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't*, 236 F. Supp. 3d 810, 816 (S.D.N.Y. 2017).

Plaintiff argues that it is entitled to expedited processing on two grounds: (i) it is a person primarily engaged in disseminating information, and the request concerns an urgency to inform the public concerning actual or alleged Federal Government activity; and (ii) the matter is one of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence. Plaintiff has not satisfied its burden of proof on either ground.

The Court reviews *de novo* the denial of expedition based on an urgency to inform. *See Al-Fayed v. C.I.A.*, 254 F.3d 300, 305 (D.C. Cir. 2001). "[I]n determining whether requestors have demonstrated 'urgency to inform,' and hence 'compelling need,' courts . . . consider at least three factors: (1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." *Al-*

*Fayed*, 254 F.3d at 310; *see Documented NY*, 2021 WL 4226239, at *3; *Bloomberg*, 500 F. Supp. at 377.  Courts narrowly apply the specified categories for compelling need.  *Al-Fayed*, 254 F.3d at 310.  Because DOJ's resources are not unlimited and because expedition is a relative exercise, the determination of whether there is a compelling need for expedition is to some extent a zero-sum exercise.  If one request is accorded expedited treatment, other requests may not be accorded expedited treatment.  *See Documented NY*, 2021 WL 4226239, at *4 ("[O]rdering faster production here would necessarily slow production in other cases.").  "[A]n unduly generous approach would also disadvantage those requestors who do qualify for expedition, because prioritizing all requests would effectively prioritize none."  *Al-Fayed*, 254 F.3d at 310.  The public's right to know, "although a significant and important value," is not itself a "significant recognized interest."  *Id*.

There is no dispute that Rolling Stone, as the publisher of a well-known and widely-distributed magazine, is a person "primarily engaged in disseminating information."  *See Landmark Legal*, 910 F. Supp. 2d at 275 ("[c]ourts regularly find that reporters and members of the media qualify" as persons primarily engaged in disseminating information); *see Progress v. Consumer Fin. Prot. Bureau*, 2017 WL 1750263, at *4 (D.D.C. May 4, 2017) (same).  There also is no dispute that the activities of Kissinger and those of the FBI in conducting its investigations relate to actual or alleged Federal Government activity.

But Plaintiff has not established based on the evidence before the agency that its request concerns a matter of current exigency to the American public or that the consequences of delaying a response would compromise a significant recognized interest.  Kissinger passed away in November 2023.  There is no question that his activities in government are of historical and public interest.  His involvement in the United States government began in the early 1960s when

he was a part-time consultant to President Kennedy.  He served as national security adviser and Secretary of State to President Nixon and as Secretary of State under President Ford during a time of momentous changes in the country's foreign policy.  Following the end of his official government service, he continued to consult with Presidents of the United States.  *See* Thomas W. Lippman, *Henry Kissinger, who shaped world affairs under two presidents, dies at 100*, Washington Post (November 29, 2023) https://www.washingtonpost.com/obituaries/2023/11/29/henry-kissinger-dead-obituary.  But the historical value of information regarding Kissinger is not alone enough to establish that the request concerns a matter of current exigency.

Courts have found that a request concerns a matter of *current* exigency to the American public where "the subject matter of the request was central to a pressing issue of the day," *Wadelton v. Dep't of State*, 941 F. Supp. 2d 120, 123 (D.D.C. 2013), or was of "immediate public interest in view of [an] ongoing debate," *Am. Civ. Liberties Union v. U.S. Dep't of Just.*, 321 F. Supp. 2d 24, 29 (D.D.C. 2004).  Plaintiff's request is indiscriminate.  It calls for all documents concerning Kissinger during that entire time period.  Plaintiff admits that "not every record about Kissinger will be of extraordinary public interest," Dkt. No. 41 at 4, but the burden is on Plaintiff to justify expedited processing and Plaintiff fails to identify any specific subject relative to Kissinger's six-decade career that the requested records relate to that is of current exigency to the American public.  *See Elec. Privacy Info. Ctr. v. Dep't of Def.*, 355 F. Supp. 2d 98, 101 (D.D.C. 2004).  The request asserts that Kissinger was the subject of inquiry during the Mueller Investigation[5] but the report of that investigation was released in March 2019, more than

---

[5] In May 2017, former FBI Director Robert S. Mueller, III, was appointed Special Counsel to investigate the Russian government's efforts to interfere in the 2016 presidential election.  *See* Special Counsel Robert S. Mueller, *Report on the Investigation Into Russian Interference in the*

8

four-and-a-half years before Plaintiff's FOIA request.  *See generally* Mueller, *Report on the Investigation Into Russian Interference in the 2016 Presidential Election*; *see also Wadelton*, 941 F. Supp. 2d at 123 ("The fact that OIG conducted an investigation in 2010 certainly does not give rise to any sense of urgency."); *Tripp v. Dep't of Def.*, 193 F. Supp. 2d 229, 242 (D.D.C. 2002) (no urgent need for information when the events at issue occurred over three years earlier). While Kissinger's activities and those of the FBI relating to him may "be newsworthy, none of the events at issue is the subject of a currently unfolding story," *Al-Fayed.*, 254 F.3d at 310, and they do "not implicate the level of exigency necessary to compel expedited processing," *Documented NY*, 2021 WL 4226239, at *3.[6]

      Plaintiff also has not shown that there would be "any significant adverse consequence if the records they request were received "later rather than sooner." *Al-Fayed,* 254 F.3d at 311. The caselaw "suggests that a plaintiff seeking to establish that a particular delay would compromise recognized interests must do more than gesture at the general decline in the documents' value over time" but rather must "identify a specific end point at which the information's value drops off altogether—*i.e.*, the conclusion of a process such as a legislative vote, impeachment proceeding, national census, court case, or the like." *Heritage Found. v. U.S.*

---

*2016 Presidential Election*, at 1 (March 2019) https://www.justice.gov/archives/sco/file/1373816/dl.  The investigation found that "[t]he Russian government interfered in the 2016 presidential election in sweeping and systematic fashion." *Id*.  But, "[a]lthough the investigation established that the Russian government perceived it would benefit from a Trump presidency and worked to secure that outcome, and that the [Trump] Campaign expected it would benefit electorally from information stolen and released through Russian efforts, the investigation did not establish that members of the Trump Campaign conspired or coordinated with the Russian government in its election interference activities." *Id*. at 1–2.

[6] Plaintiff's assertion that it has published articles about Kissinger and intends to continue to do so, Dkt. No. 41 at 6, does not establish a compelling need, *see Wadelton*, 941 F. Supp. 2d at 123–24.

*Env't Prot. Agency*, 2023 WL 2954418, at *4 (D.D.C. Apr. 14, 2023), *appeal dismissed sub nom. Heritage Found. v. Env't Prot. Agency*, 2023 WL 8116008 (D.C. Cir. Nov. 17, 2023).  Here, "it is unclear precisely what 'significant recognized interest' would be compromised by releasing the documents in accordance with a typical processing timeline, as opposed to on an expedited basis."  *Energy Pol'y Advocs.,* 2021 WL 4306079, at *4.

To satisfy subsection (iv) of DOJ's regulations, a request must (1) concern a "matter of widespread and exceptional media interest" and (2) that matter must raise "possible questions about the government's integrity."  *Oversight v. U.S. Dep't of Just.*, 292 F. Supp. 3d 501, 506 (D.D.C. 2018); *see Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.*, 498 F. Supp. 3d 87, 97 (D.D.C. 2020).  It is not sufficient that the request concerns an individual as to whom there is widespread and exceptional media interest if the subject as to which there is public interest is not one that also raises questions about the government's integrity.  *Oversight*, 292 F. Supp. 3d at 506.  In its memorandum of law in support of the motion for summary judgment, Plaintiff cites an article published in the Guardian newspaper in 2000, which quotes political satirist Tom Lehrer as stating that "[p]olitical satire became obsolete when Henry Kissinger was awarded the Nobel peace prize."  Dkt. No. 24 at 8–9.  Plaintiff also cites an article from Rolling Stone magazine accusing Kissinger of being a "war criminal beloved by America's Ruling Class," a November 2023 article reporting that Kissinger met with Chinese premiere Xi Jingping, and an article from a publication called Reason in 2024 questioning how Kissinger became an American citizen.  *Id.* at 9 (citations omitted).  But judicial review of an agency's decision to deny expedition is based on the record before the agency at the time of the determination.  5 U.S.C. § 552(a)(6)(E)(iii); *see Energy Pol'y Advocs.*, 2021 WL 4306079, at *4.

10

A FOIA requester cannot withhold evidence that would support that the request should be given expedited processing and then complain that the agency failed to consider that evidence.

In this case, Plaintiff failed to establish either that the FOIA request concerns a matter of widespread and exceptional media interest or that it raised possible questions about the government's integrity. In past cases, courts have found requests to concern matters of widespread and exceptional media interest when articles were published about the matter in a "variety of publications, and repeatedly[d] referenced the ongoing national discussion" about the issue, *see Am. Civ. Liberties Union*, 321 F. Supp. 2d at 32–33, or where the requester put before the agency "more than fifty recent articles from a variety of sources" on the subject, *Brennan Ctr.*, 498 F. Supp. 3d at 97. Plaintiff cited the single obituary from the Washington Post and made the claim that Kissinger was "an extremely polarizing figure in many circles" and that in the Mueller Investigation, the FBI was looking into his activities. Dkt. No. 24-1; Dkt. No. 37-1. The evidence before the agency did not demonstrate that the information about Kissinger's death was either "widespread" or "exceptional." *See Elec. Privacy Info. Ctr.*, 322 F. Supp. 2d at 5. And, it did not show that his death (or any other subject that could have attracted widespread and exceptional media interest) raised questions about the government's integrity. *Id*. at 6. Even applying *de novo* review, it is apparent that Plaintiff's FOIA request did not qualify for expedited processing under subsection (iv) of the FOIA regulations.

Finally, Plaintiff asserts that the FBI failed to demonstrate reasoned decision-making in denying its request for expedited processing. Dkt. No. 24 at 10–12. In its denial, the FBI stated: "You have not provided enough information concerning the statutory requirements for expedition; therefore, your request is denied." Dkt. No. 24-2; Dkt. No. 37-3. Plaintiff relies on

11

the District Court opinion in *Citizens for Responsibility & Ethics in Washington*, 436 F. Supp at 359.

That case is inapposite.  In that case, the FOIA request concerned a subject that, on its face, constituted almost the paradigmatic example of a matter of widespread and exceptional media interest that raised possible questions about the government's integrity.  The FOIA requestor, Citizens for Responsibility and Ethics in Washington ("CREW"), submitted a request for all documents pertaining to the views that the Office of Legal Counsel provided to the United States Attorney General before that public officer held a press conference in advance of the public release of the report prepared by Special Counsel Mueller on the investigation into Russian interference in the 2016 United States presidential election and announced that the evidence was not sufficient to establish the commission of a crime by the President of the United States.  *Id.* at 357.  As the D.C. District Court described it:

> CREW stated in its request that the Attorney General of the United States had mischaracterized some of the core conclusions contained in a report of great public significance, written by the Department's own duly appointed Special Counsel, in advance of its public release.  CREW's submission supported an inference that at best, the Attorney General undertook to frame the public discussion on his own terms while the report itself remained under wraps, and at worst, that he distorted the truth.

*Id.* at 361.  In response to the FOIA requestor's three-paragraph detailed explanation of why the documents would bear on questions about the government's integrity, DOJ offered the curt single sentence response: "CREW's FOIA request is not a matter in which there exist possible questions about the government's integrity that affect public confidence."  *Id.* at 361.  The District Court concluded that DOJ's determination not to grant expedited processing was based on a single sentence with no reasoning or analysis, it was not entitled to deference, and therefore denied the Department of Justice's motion for summary judgment.  *Id.*

In this case, by contrast, Plaintiff offered no reasons and no evidence why the documents it requested could bear on government integrity but rather itself simply parroted the statute and the FBI therefore gave the only answer it could have given—that Plaintiff had not provided enough information to support a claim for expedited processing.  It is the Plaintiff and not the DOJ that is moving for summary judgment.  And the Court denies the motion for partial summary judgment not out of deference to the DOJ or the FBI but based on its own independent review and its conclusion that, based on the information before the agency, Plaintiff did not establish that its request met any of the standards for expedited processing.

## CONCLUSION

The motion for partial summary judgment is DENIED.  The Clerk of Court is respectfully directed to close the motion at Dkt. No. 24.


SO ORDERED.

Dated: July 8, 2024
      New York, New York

                                             LEWIS J. LIMAN
                                          United States District Judge